In the Matter of the Petition for Disciplinary Action against Harold D. KIMMEL, Jr., a Minnesota Lawyer.

No. 81–955.

Supreme Court of Minnesota.

July 23, 1982.

Michael J. Hoover, Director of Lawyers Professional Responsibility, and William J. Wernz, St. Paul, for petitioner.

Collins, Buckley, Sauntry & Haugh, Theodore J. Collins and Mark W. Gehan, Jr., St. Paul, for respondent.

PER CURIAM.

This disciplinary case is before the court following the referee's recommendation that respondent be suspended. After a January 19, 1982, hearing, the referee filed his findings of fact, conclusions of law, and recommendation that respondent be suspended while on criminal probation, provided that respondent may continue as examiner of titles for Washington County.

On June 19, 1981, a Lawyers Professional Responsibility Board panel heard charges of unprofessional conduct against respondent. Following the panel's recommendation this court issued an order September 21, 1981, suspending the respondent, providing, however, that he could complete two probate files and continue as Washington County Examiner of Titles during the pendency of disciplinary proceedings.

Respondent, Harold D. Kimmel, Jr., is 48 years of age, married and the father of five children. He graduated from Valparaiso University Law School in Indiana, and was admitted to practice in this state in 1959. Respondent was engaged in the private practice of law in Stillwater, Minnesota, for the 21 years preceding his suspension on September 21, 1981. He also served some years as city attorney and examiner of titles.

Respondent's disciplinary proceeding is based on two complaints, each charging nonconsensual sexual contact with members of the same sex. The first complaint involved a boy 13 years of age. While giving the boy a ride home from an outing on respondent's boat, respondent touched the genital area of the boy's clothing. Respondent was charged by the Washington County authorities with criminal sexual conduct in December 1980. On December 17, 1980, respondent entered a guilty plea to criminal sexual conduct in the fourth degree, see Minn.Stat. § 609.345(b) (1980), a felony punishable by not more than five years imprisonment.

The Washington County District Court, on April 6, 1981, accepted respondent's plea, entered a judgment of guilty, and stayed imposition of sentence for five years, subject to respondent's compliance with the terms and conditions of the stay.[1] The terms of the stay were that respondent complete a program on sexuality sponsored by the University of Minnesota;[2] that re-

---

1. By operation of statute, if respondent successfully completes the terms of the probation required by the Washington County District Court, his conviction will be deemed a misdemeanor. Minn.Stat. § 609.13, subd. 1(2) (1980).

2. The Washington County District Court subsequently granted respondent's request to undergo private therapy in lieu of completion of the University of Minnesota program.

spondent pay the cost of the program; that respondent remain lawabiding and of good behavior; and that respondent obey the rules and regulations of Washington County Court Services.

The second complaint brought against respondent arose out of an incident with a 20-year-old man whom respondent had prosecuted while city attorney. On January 3, 1977, the young man, J.C.R., entered a plea of guilty to a disorderly conduct charge brought in Washington County Court by the City of Stillwater. Respondent appeared at the plea as city attorney and J.C.R. appeared without counsel. Following a stay of imposition and eventual dismissal of sentence against J.C.R., respondent took an interest in J.C.R.'s well-being and attempted to find him a job and get him involved in local youth programs. Sometime in late 1977 or early 1978 respondent invited J.C.R. to his office and intentionally touched the clothing covering J.C.R.'s genital area.

This pattern of sexual contact with males began for respondent at about age 13 and continued on an infrequent basis until a few years prior to his suspension, when the frequency had increased. Respondent is presently being treated by a licensed psychologist specializing in criminal sexual offenders, and the referee found that the respondent "has made progress in his current activity." The referee also found that although there is a possibility that sexual contacts like those which are the subject of this disciplinary proceeding might occur in the future, such contact was not probable. This conclusion was confirmed by respondent himself and one of his treating doctors.

The referee found respondent to be a "successful attorney" with an "excellent reputation." He also found respondent to have been cooperative with his investigation and the possessor of a strong record of community service. In view of these considerations, and despite giving "strong consideration to recommending disbarment," the referee recommended that respondent be suspended for so long as he remains on probation for his criminal sexual conduct offense. The referee further recommended that respondent be allowed to continue his duties as examiner of titles for the Washington County District Court. The issue before us is whether respondent's felonious sexual misconduct justifies disbarment.

This case does not present the question of whether *any* discipline is appropriate, but instead, *what* discipline is appropriate. The Director of the Lawyers Professional Responsibility Board [hereafter Director] contends that respondent's felonious sexual misconduct justifies disbarment. The referee suggests a period of suspension coextensive with respondent's term of probation, and would permit respondent to continue as Washington County Examiner of Titles.

The inquiry must begin with a reiteration of the purpose served by the discipline of lawyers. "As we have so often stated, the purpose of discipline is not primarily punitive but, 'to guard the administration of justice and to protect the courts, the legal profession and the public.'" *In re Serstock*, 316 N.W.2d 559, 561 (Minn.1982) (quoting *In re Hanson*, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960)).

A cursory reading of the cases might lead one to conclude that this court has determined that disbarment is normally necessary to protect the profession and the public where a lawyer has been convicted of a felony, *see e.g., In re Schmidt*, 154 Minn. 539, 191 N.W. 939 (1923); *In re O'Neill*, 137 Minn. 477, 163 N.W. 504 (1917); *In re Reineke*, 124 Minn. 528, 144 N.W. 1134 (1913). However, recently we have clearly indicated a willingness to evaluate felony convictions individually and approve sanctions less than disbarment for a lawyer convicted of a felony.

This court approved a stipulation in *In re Scholle*, 274 N.W.2d 112 (Minn.1978), that suspended Scholle for two years and placed

him on supervised probation. Scholle had been convicted of the crimes of conspiracy to import and distribute cocaine. Also, we implied in *In re Hedlund*, 293 N.W.2d 63, 67 (Minn.1980), that under certain circumstances a felony conviction need not inevitably lead to disbarment. *See also In re Swagler*, 239 Minn. 566, 58 N.W.2d 272 (1953) (attorney convicted of criminal negligence as a result of a motorcycle accident suspended for six months); *In re Neumeister*, 180 Minn. 146, 230 N.W. 487 (1930) (attorney who committed grand larceny while not practicing law and while an alcoholic disciplined with a suspension).

Neither the Code of Professional Responsibility, *see* DR 1–102(A)(3), nor Minn.Stat. § 481.15 (1980) requires disbarment for "engag[ing] in illegal conduct involving moral turpitude," DR 1–102(A)(3), or the commission of a felony. Minn.Stat. § 481.15 (1980) states that a lawyer *may* be removed or suspended upon conviction of a felony.

Against this background, then, the particular type of felony in this case must be considered. Mr. Kimmel has been convicted of a felony involving sexual misconduct with a minor. There are few Minnesota decisions which involve disciplinary proceedings resulting from illegal sexual conduct. The parties agree that the following are the only such cases: *In re Kamin*, 262 N.W.2d 162 (1978); *In re Heinze*, 233 Minn. 391, 47 N.W.2d 123 (1951); *Application of Van Wyck*, 225 Minn. 90, 29 N.W.2d 654 (1947); *In re Van Wyck*, 207 Minn. 145, 290 N.W. 227 (1940).

The most recent of the cases, *In re Kamin*, is not very helpful because the attorney declined to file an answer to the petition for disbarment and, therefore, was disbarred by default. However, the matter concerned a pattern of sexual abuse of the 10- to 12-year-old children of clients. The attorney in *In re Heinze* had been accused of "improper actions" with five boys, both before and after his admission to the bar. Disciplinary proceedings were instituted, but the attorney joined the army and discipline was stayed. Over five years later proceedings were reinstituted and the attor-

ney was disbarred. The court noted that "[i]t goes without saying that respondent's conduct, as established by the evidence, was of such a nature as not only to warrant but to compel his disbarment." 47 N.W.2d at 125. Finally, the *Van Wyck* case involved an attorney who entered a guilty plea to the felony of indecent assault upon a boy 15 years of age. Van Wyck was jailed for his offense and offered no evidence to support his request for leniency. The court refused to appoint a referee when he requested reinstatement seven years later. *Application of Van Wyck*, 225 Minn. 90, 29 N.W.2d 654 (1947).

Quite simply, it is the respondent's contention that it is unnecessary to disbar him because it is highly unlikely that he will again engage in the conduct for which he is being disciplined. When read carefully, the justifications cited by the Director in support of his position that disbarment is the appropriate sanction are primarily directed to the nature of respondent's misconduct, as opposed to any danger he might present to the public. Respondent's sexual contacts were unrelated to the practice of law, and there is no indication that disbarment is required to adequately protect the public.

Respondent argues that the earlier cases that dealt harshly with sexual offenders were decided during an era when medical and psychological understanding of sexual dysfunction was less developed. Currently, effective treatments have been developed and respondent is undergoing such treatment. Respondent cites *In re Safran*, 18 Cal.3d 134, 133 Cal.Rptr. 9, 554 P.2d 329 (1976), as an example of a state court meting out discipline less than disbarment for a convicted sex offender who had submitted and responded well to psychiatric treatment.

Though, of course, this court bears the final responsibility for discipline of attorneys, we have placed great weight on the recommendations of the referee. *See In re Fling*, 316 N.W.2d 556, 559 (Minn.1982). After carefully considering recommending disbarment, the referee concluded that the profession and the public would be best served by permitting the respondent to con-

tinue as examiner of titles during a period of suspension coextensive with his criminal probation.

We will follow the referee's recommendation in this case. As respondent suggests, current literature seems to indicate that sexual dysfunction is analogous to chemical dependency in the sense that while inner propensities may be difficult to alter, outward behavior is subject to change. This court has traditionally been lenient with attorneys who can trace their misdeeds to the latter disease. Sexual dysfunction is now treatable in much the same manner as chemical dependency. Respondent has demonstrated that he is undergoing and cooperating with treatment and is, consequently, unlikely to be a danger to the public or the profession.

While, obviously, we do not condone respondent's misconduct and regard it as serious, we believe the public and the profession will be best served by restricting respondent's practice to examiner of titles throughout the remainder of his probation, with the right to resume full practice at the conclusion of his probation.

PETERSON, Justice.

I concur in the result.