351 N.W.2d 13 (1984)
In the Matter of the Petition for Disciplinary Action Against Donald J. HEFFERNAN, a Minnesota Lawyer.
No. C9-82-82.
Supreme Court of Minnesota.
July 6, 1984.
Michael J. Hoover and William J. Wernz, St. Paul, for appellant.
James P. Miley, Minneapolis, for respondent.
Heard, considered, and decided by the court en banc.
PER CURIAM.
Following a hearing on a petition for disciplinary action the referee appointed by this court, the Honorable Clinton W. *14 Wyant, recommended that attorney Donald J. Heffernan be publicly reprimanded, suspended from the practice of law for three months, and then placed on supervised probation for a minimum period of three years. We adopt the recommendation.
Respondent Donald J. Heffernan has been an attorney licensed to practice law in Minnesota since 1966. Throughout his legal career Heffernan has devoted substantial time to pro bono work in the areas of civil and women's rights, mental health, and historic building preservation. Until 1979 respondent practiced law in partnership with other lawyers, but from 1979 through 1982 he was a sole practitioner in St. Paul. At about the same time that respondent was engaged in winding up the affairs of a seven-year legal partnership, closing the partnership offices, and setting up his solo practice, he was embroiled in a bitter divorce and child custody battle.
The petition for disciplinary action arises out of two complaints about Heffernan's handling of a decedent's estate. The referee found that respondent had violated specified rules of the Minnesota Code of Professional Responsibility by converting clients' funds to his own use; by commingling the funds of clients and nonclients from 1979 to 1982; by failing to maintain required books and records while falsely certifying that proper records were maintained; by neglecting the Plifka estate; and by improperly notarizing documents.
Respondent Heffernan was retained on May 1, 1979 to probate the estate of Lydia Plifka. By November 1979 respondent had identified the Plifka heirs and collected substantially all of the assets of this relatively small estate, and by March 1980 most of the expenses of administration had been paid. During August 1980 respondent began using trust account funds to meet his business expenses, drawing payroll and rent checks and even paying yacht club storage from the trust account. Over a 10-month period he misappropriated between $7,000 and $9,000 belonging to the Plifka estate. In May 1981, shortly after the Board initiated its investigation of the complaints it had received about the Plifka estate, Heffernan realized the extent of his misappropriation, secured a bank loan, and replaced the funds.
Partial distribution to the Plifka heirs began in December 1980 and continued sporadically until May of 1983. On several occasions checks payable to Plifka heirs were returned for insufficient funds. Although respondent assured the district investigator in March 1981 that the estate would be closed shortly, $1,245 was still unaccounted for at the time of oral argument before this court, and the order allowing the final account was not issued until January 30, 1984.
During much of his stint as a sole practitioner Heffernan failed to keep even rudimentary trust account records. He did not maintain cash receipts and disbursements journals for the trust accounts, subsidiary ledgers showing the amount held for each client, monthly reconciliations, checkbook or bank statement balances  or even cancelled checks or deposit slips  as required by Minn.Code Prof.Resp. DR 9-103(A) (1982)[1] and LPRB Opinion 9. Nevertheless, for the years 1979 through 1982 the respondent certified to the Clerk of the Supreme Court that he maintained the required books and records, thereby violating Minn.Code Prof.Resp. DR 9-103(B) (1982).[2]
Conversion of client funds and commingling of personal and client funds, coupled with a failure to maintain proper records, are grounds for serious professional discipline. In re Quello, 338 N.W.2d 31 (Minn.1983). In cases of extensive misappropriation of funds belonging to clients, this court has often ordered disbarment. In re Austin, 333 N.W.2d 633 (Minn.1983). The sanction to be imposed in any particular case must, of course, depend on the specific facts of the case, together with any aggravating or mitigating circumstances. *15 In re Hedlund, 293 N.W.2d 63, 67 (Minn. 1980). The purpose of discipline is not to punish the lawyer but to guard the administration of justice and to protect the courts, the legal profession and, above all else, the public. In re Hanson, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960).
Although the gravity of respondent's conduct warrants severe discipline, we conclude that under the circumstances of this case the public interest may be better served by sanctions other than disbarment. In re Fling, 316 N.W.2d 556 (Minn.1982). As the referee noted, the misconduct in respect of the Plifka estate appears to be an isolated occurrence in an otherwise ethical practice. Although we agree with the referee's conclusion that the turmoil in respondent's personal and professional life neither excuses, justifies, nor even explains his misconduct, those problems appear temporary in nature and they are circumstances to be considered in imposing discipline. In re Hedlund, 293 N.W.2d 63, 67 (Minn.1980). Respondent is now associated with a law firm which is said to operate under established bookkeeping procedures.
Accordingly, we impose the following sanctions:
1. Respondent is publicly reprimanded.
2. Respondent is hereby suspended from the practice of law for a period of three months from the date of this judgment; compliance with Rule 18(e) of the Rules on Lawyers Professional Responsibility shall not be a condition of reinstatement; and
3. Respondent is placed on supervised probation for a minimum of three years from the date of reinstatement. The person designated to supervise respondent shall monitor respondent's financial affairs and make periodic reports to the Lawyers Professional Responsibility Board and shall assure himself and the court of respondent's full compliance with proper and adequate books and records regarding his handling of all client funds.
It is so ordered.
NOTES
[1] Effective July 1, 1983, this rule was renumbered DR 9-104(A).
[2] Effective July 1, 1983, this rule was renumbered DR 9-104(B).