**In the Matter of the Application for DISCIPLINE OF Frederick D. KRAEMER, an Attorney at Law of the State of Minnesota.**

No. CO–84–1996.

Supreme Court of Minnesota.

Feb. 1, 1985.

Michael J. Hoover, Dir. of Lawyers Prof. Resp., William J. Wernz, St. Paul, for appellant.

Frederick D. Kraemer, Fort Worth, Tex., pro se.

PER CURIAM.

This is a disciplinary proceeding, filed by the Director of the Lawyers Professional Responsibility Board (Director), seeking disbarment of the respondent, Frederick D. Kraemer.

This action arises from the respondent's federal conviction of six counts of interstate transportation of stolen goods, mail fraud and conspiracy, and a North Dakota state court conviction of theft of property.

Respondent was sentenced in federal district court to six years each on four counts and five years each on two counts. Respondent pleaded guilty to the state court charge and was sentenced to 18 months. All sentences run concurrently. The respondent is currently incarcerated at the Federal Corrections Institute in Fort Worth, Texas.

Respondent is licensed to practice law in Minnesota and North Dakota. He was admitted to the Minnesota Bar in 1979. The federal crimes of which respondent was convicted involved participation in a scheme for fraudulently obtaining and cashing more than $46,000 worth of airline tickets. Passenger coupons were turned in to the airlines and respondent received money from the airlines for the coupons. The state court conviction was for the sale of a stolen Rolex watch valued in excess of $500.

The respondent offers the following scenario in his brief to explain his conduct: In September, 1982, respondent received a call from a Minneapolis friend, Tony Mancino, at respondent's office in Fargo, North Dakota. Mancino wanted respondent to represent the wife of his friend Dale Michaeloff. Marie Michaeloff had been charged with, and had pled guilty to, six counts of felony theft in August, 1982, in Fergus Falls, Minnesota. Dale Michaeloff retained Kraemer in order to obtain post-conviction relief for the Fergus Falls convictions and also to handle other felony theft charges filed against Marie in Dakota and Olmsted Counties.

On or about September 22, 1982, after reviewing Marie's case, respondent felt that he could help her and advised Dale that his fees would be approximately $20–25,000. Respondent claims that during the month of October, 1982, he and Dale became friends. At some point, respondent states, Dale offered to trade airline tickets for legal services. Dale had previously worked for Dollar Travel Agency, and had recently started his own travel agency, called Budget Travel. Respondent states that he knew Dale was "cash short" and

that he "had no reason to doubt Dale's authority to issue the tickets," so he accepted the proposal. He further states that he also accepted a proposal to exchange his 1981 Lincoln Continental for airline tickets. He says he checked with the airlines and found the tickets to be valid. Respondent states that Mancino gave him a Rolex watch, to sell to a jeweler friend of respondent. Mancino received half the proceeds and respondent applied the balance to Marie's account, as agreed.

At this time, respondent was involved in an affair with Charlotte Skjonsby, who was indicted as his coconspirator. Respondent explains that some of the airline tickets were in Skjonsby's name because he didn't want his wife to receive them in a divorce settlement. Skjonsby pled guilty and was sentenced to six months in jail.

In December, 1982, respondent states, after hearing Dale say that he was " 'burning' the airline for half a million dollars," he became suspicious that the tickets might not be valid. In July, 1983, respondent went to the FBI. He asserts that at the time he told his story to the FBI no investigation had been started by any law enforcement agency.

Respondent states that his federal case is presently on appeal to the Eighth Circuit Court of Appeals. Further, he states that he is scheduled for release on October 15, 1985, after serving 14 months, the minimum amount of time he would be required to serve before being paroled.

The Director alleges a violation of Minn. Code Prof.Resp. DR 1–102 in support of his petition for disbarment.

Minn.Code Prof.Resp. DR 1–102 states: A lawyer shall not

\* \* \* \* \* \*

(3) Engage in illegal conduct involving moral turpitude

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

\* \* \* \* \* \*

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

In his petition, the Director cites the following cases in support of his proposition that Kraemer should be disbarred: In *In re Wegner*, 291 N.W.2d 678 (Minn.1979), the respondent was convicted of conspiracy to import marijuana into the United States in violation of 21 U.S.C. §§ 952(a) and 963 (1971). *Id.* He was sentenced to five years in prison. *Id.* He admitted the allegations contained in the Board's application for discipline, offering his serious alcohol problem and severe financial reverses as mitigating circumstances. This court disbarred the respondent based on the protracted course of his illegal conduct, the injury he inflicted on those in the conspiracy who were his clients, and the potential for damage to those consumers or dependents of users of drugs. *Id.* at 679.

In *In re Turnquist*, 206 Minn. 104, 287 N.W. 795 (1939), the respondent was sentenced to six years in the state prison for grand larceny. *Id.* at 105, 287 N.W. at 795. Respondent did not answer the disciplinary proceeding filed against him, so the allegations were deemed admitted. This court disbarred the respondent. *Id.*

■ Historically, this court disbarred attorneys for conviction of a felony. *See In re Schmidt*, 154 Minn. 539, 191 N.W. 939 (1923) (disbarred for conviction of subornation of perjury); *In re O'Neill*, 137 Minn. 477, 163 N.W. 504 (1917) (disbarred for conviction of conspiring with bankrupt to conceal property from trustee); *In re Reineke*, 124 Minn. 528, 144 N.W. 1134 (1913) (disbarred for conviction of forgery). This court has recently recognized, however, that felony convictions do not mandate automatic disbarment. *In re Olkon*, 324 N.W.2d 192 (Minn.1982) (attorney convicted of two counts of attempted theft by swindle suspended for two years); *In re Scallen*, 269 N.W.2d 834, 840–43 (Minn.1978) (attorney's foreign conviction of theft and publishing a false prospectus warranted indefinite suspension). Each case must be considered on its own facts and analyzed in

light of the purposes of an attorney disciplinary proceeding, which are "to protect the public and the court and to serve as a deterrent against future misconduct." *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn. 1983).

■ Under Minn.R.Prof.Resp. 19(a) a lawyer's criminal conviction is conclusive evidence that he committed the conduct for which he was convicted. Despite this rule, respondent offers a lengthy explanation of his version of the facts. He asks this court to review certain testimony from his criminal trial to demonstrate that Dale Michaeloff's testimony was perjured and Skjonsby's testimony could not be trusted. This court has refused attempts to relitigate the facts of a criminal conviction in a disciplinary proceeding. *See In re Hedlund*, 293 N.W.2d 63, 66 (Minn.1980); *In re Scallen*, 269 N.W.2d 834, 840 (Minn.1978). Further, since respondent failed to file an answer to the Director's petition, the allegations contained in it were deemed admitted. Minn. R.Prof.Resp. 13(c). This court will look at the circumstances surrounding the criminal act to see whether some discipline short of disbarment is appropriate. *Hedlund*, 293 N.W.2d at 66.

In *Hedlund*, the attorney was convicted of presenting false claims to a public body in violation of Minn.Stat. §§ 609.465 and 609.05, and diverting corporate property from a corporation in violation of Minn. Stat. §§ 300.60 and 609.05. *Id.* at 64. The attorney offered the following as mitigating circumstances: his long, previously unblemished career; his pro bono work; his financial difficulties; and the fact that he was not involved in the day-to-day activities of the nursing home which was the subject of his scheme. *Id.* at 67. This court determined that the danger of his activities outweighed the mitigating circumstances. The activities the court considered dangerous were: that the lawyer personally profited from the illegal rebate scheme; that he presented false claims to a public body; that his conduct was not a single offense; and that he counseled his co-conspirators to "stick together" and lie about the use of rebated cash. *Id.* This court ordered the attorney disbarred. *Id.*

In *In re Daffer*, 344 N.W.2d 382 (Minn. 1984), this court considered what factors it would find mitigating in deciding to suspend an attorney rather than disbar him. In that case the respondent was convicted of the crime of federal mail fraud in connection with a fairly complex scheme. *Id.* at 383–84. The court considered (1) his acknowledgment of guilt and contrition; (2) his full and prompt restitution of misappropriated funds, including interest; (3) the fact that all acts arose from a single transaction and occurred within a very brief time; and (4) the fact that respondent was of good character and cooperated with all interested persons. *Id.* at 385. The court indefinitely suspended the attorney in that case, with the right to apply for readmission to practice. *Id.* at 386.

■ The only actual mitigating circumstance that respondent offers is that he turned himself in to the FBI in July, 1983. It should be noted that this was seven months after respondent "first became aware that there was something wrong with the tickets." Nevertheless, taking his statements as true, it does appear that he voluntarily went to the authorities and, further, that he subsequently cooperated with them.

To his detriment, the following factors also appear: Respondent's actions of cashing in airline coupons occurred over a period of nearly a full year. Approximately 13 different names appeared on the fraudulent coupons, making it difficult to believe respondent thought the coupons were valid. The testimony introduced at trial through Dale Michaeloff, and apparently supported by the testimony of Charlotte Skjonsby, was that Kraemer had stolen the tickets out of Michaeloff's travel office.

Based upon the case law outlined above, interpreting and applying the rules of professional responsibility and their purpose, we see no alternative but to agree with the Director and disbar the respondent. So ordered.