**In re Petition for DISCIPLINARY ACTION AGAINST James D. OTIS, an Attorney at law of the State of Minnesota.**

No. C4–96–1604.

Supreme Court of Minnesota.

Aug. 13, 1998.

Edward J. Cleary, Director of Office of Lawyers Professional Responsibility, Candice M. Hojan, Senior Asst. Director, St. Paul, for appellant.

Michael J. Hoover, Minneapolis, for respondent.

### OPINION

PER CURIAM.

On June 2, 1992, the New Hampshire Supreme Court disbarred respondent James D. Otis from the practice of law due to his improper sexual behavior toward 6 of his

female clients. In 1996, the Director of the Minnesota Office of Lawyers Professional Responsibility first learned of Otis's disbarment and filed a petition for reciprocal discipline. Otis admits to the misconduct that led to his New Hampshire disbarment, but he claims that his misconduct was caused by a seizure disorder that has since been controlled through medication and, therefore, requests that this court not disbar him. As Otis has not engaged in improper behavior since he began taking certain medication more than 6 years ago, we conclude that disbarment in Minnesota is not currently an appropriate sanction. However, because Otis committed misconduct which caused harm to clients and embarrassment to the legal profession, we order that he is suspended from the practice of law for a minimum of 5 years or until he is fully reinstated to practice law in New Hampshire.

Otis was admitted to the Minnesota bar in 1976. Before ever practicing in Minnesota, Otis moved to New Hampshire where he was admitted to the bar in 1977 and started his own practice. In 1990, the New Hampshire Supreme Court Committee on Professional Conduct brought a petition for disbarment against Otis, alleging that he violated certain rules of professional conduct when he sexually assaulted one of his clients, S.B.

Otis began representing S.B. in her divorce in March 1988. In the summer of 1989, while Otis was still representing S.B., she began working full time for Otis as his secretary in his law office. S.B.'s wages were reduced in exchange for Otis's legal work on her divorce case, and she did some of the work for her case herself. This was the only way she could afford to have Otis represent her.

Several weeks after S.B. started working for Otis, he began to make remarks with sexual overtones that were directly related to her. Soon the verbal remarks escalated into physical advances, such as backing her into a corner and rubbing up against her. S.B. managed to evade Otis's unwelcome sexual advances until November 24, 1989. She went into the law office over the Thanksgiving holiday to catch up on some filing, and Otis was there when she arrived. Later that day,

Otis came out of his office, locked the door to the firm and walked toward S.B. S.B. tried to get up from the floor where she had been working, but Otis put his foot under her chin and kicked her back to the floor. Then Otis picked S.B. up, brought her into his office, threw her on the couch, and sexually assaulted her. S.B. didn't report the assault, but it was discovered in the course of S.B.'s divorce proceedings, and a petition was filed against Otis. The charges against Otis gained some publicity in New Hampshire.

Due to the publicity, 5 other former female clients of his came forward with more allegations of sexually inappropriate behavior. Some of these former clients testified at a September 1991 evidentiary hearing on the petition. Their testimony revealed that Otis's misconduct began as early as 1987 and lasted through his representation of S.B. in 1991. Although none of the former clients testifying alleged that Otis physically assaulted them, each testified that he made numerous inappropriate sexual remarks. They all ultimately fired Otis.

While Otis does not deny that he made sexual comments to his clients and sexually assaulted S.B., he claims that his inappropriate behavior was caused by a seizure disorder resulting from a serious head injury. Otis fractured his skull in 1977 when he fell on a cement floor. He developed a massive hematoma on the right side of his brain, which required surgery. After having surgery, Otis was put on two anti-seizure medications. When his doctor temporarily reduced his dosage of one of the medications in August 1978, he suffered a grand mal seizure. Otis testified that he also had other smaller seizures beginning in approximately the mid to late 1980s and continuing through 1991. Otis claims that during the time of his misconduct he suffered from these seizures, some of which he did not know about at the time, and that these seizures caused him to misbehave sexually towards his clients.

In addition to the seizure disorder, Otis also experienced emotional problems. In the summer of 1990, after the New Hampshire Supreme Court Committee on Professional Conduct had filed a complaint against him, Otis was treated by psychotherapist Dr.

David Brower. Otis sought Brower's help in dealing with his marriage and problems he was having with his son and stepchildren. Then, in January 1991, Otis admitted himself to a hospital after several of his friends and acquaintances told him that he needed help. Otis spent several weeks in the hospital and was released in late February 1991. Otis continued to get medical treatment from Brower, and received additional treatment from Dr. Henry Astarjian, a neurologist, and Dr. Knesevich, a psychiatrist.

Both Astarjian and Knesevich testified at Otis's evidentiary hearing in 1991. Astarjian testified that Otis's inappropriate behavior with his female clients occurred as a result of seizures he was having due to his earlier head trauma. According to Astarjian, these seizures that were out of his control caused Otis to engage in socially unacceptable behavior. Astarjian explained that since he changed Otis's seizure medication, Otis's seizures have been under control and he is less depressed. Knesevich agreed with Astarjian that since Otis's change in medication, Otis's condition gradually improved, and at the time of the hearing Otis seemed to be entirely recovered from his depression. Knesevich testified that in the future Otis would be able to recognize his own inappropriate behavior.

The professional conduct committee presented the opinion of Dr. Richard E. Nordgren to refute Otis's claim that seizures caused his misconduct. While Nordgren agreed that Otis suffered from a seizure disorder, he did not agree that the disorder caused his sexual misconduct. Further, Nordgren testified that preventing Otis's inappropriate behavior in the future either through medication or therapy would be unlikely.

At the conclusion of the hearing, the referee determined that Otis violated New Hampshire Rules of Professional Conduct 1.7(b),[1] 1.8(b),[2] and 8.4(a).[3] The New Hampshire Supreme Court disbarred Otis from the practice of law on June 2, 1992.

Otis failed to notify the Director of the Minnesota Office of Lawyers Professional Responsibility of his disbarment in New Hampshire as required by Rule 12(d) of the Minnesota Rules on Lawyers Professional Responsibility (RLPR). Otis claims he did not notify the Minnesota Director of his disbarment because he was not aware of the Rule 12 mandate. However, ignorance of the rules regulating lawyers is no excuse for noncompliance. All attorneys who are registered to practice law in Minnesota will be held to the standards and mandates set out in the Minnesota Rules of Professional Conduct and the Minnesota Rules on Lawyers Professional Responsibility.

Otis has not practiced law in any state since his New Hampshire disbarment. However, he continues to pay his annual registration fee and is currently licensed to practice law in Minnesota. Having learned of Otis's disbarment in New Hampshire, the Director

1. New Hampshire Rule of Prof. Conduct 1.7(b) provides:

   A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
   (1) the lawyer reasonably believes the representation will not be adversely affected; and
   (2) the client consents after consultation and with knowledge of the consequences.
   The language of Minn. R. Prof. Conduct 1.7(b) is almost identical to the above rule.

2. New Hampshire Rule of Prof. Conduct Rule 1.8(b) provides:

   A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation and with knowledge of the consequences.
   See, e.g., Bourdon's Case, 132 N.H. 365, 565 A.2d 1052, 1056 (1989) (holding that rule 1.8(b) is violated if attorney uses information of a divorce client's vulnerability to pursue a sexual relationship with the client).

   Minn. R. Prof. Conduct 1.8(b) provides: "A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation." In addition, Minn. R. Prof. Conduct 1.8(k) prohibits a lawyer from having sexual relations with a current client unless a consensual sexual relationship existed prior to the attorney-client relationship.

3. Both N.H. R. of Prof. Conduct 8.4(a) and Minn. R. Prof. Conduct 8.4(a) make any attempt to violate the Rules of Professional Misconduct a violation in itself.

now requests that we impose reciprocal discipline. Rule 12(d), RLPR, which governs reciprocal discipline, provides:

> [Following an order to show cause] this Court may thereafter impose the identical discipline unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota.

Otis does not contend that New Hampshire's discipline procedures were unfair or that they did not afford him due process. *See, e.g., In re Koss,* 572 N.W.2d 276, 277 (Minn.1997) (holding that in reciprocal discipline cases disciplinary procedures in the other state must meet Minnesota's due process requirements). Rather, Otis essentially argues that imposing disbarment at this time would be unjust because the mitigating factors regarding his illness are now more evident than they were at the time the New Hampshire Supreme Court disbarred him. At the time of Otis's hearing in New Hampshire, he had been on new anti-seizure medication for approximately 7 months. Otis suggests that this amount of time was insufficient to demonstrate that the misconduct had been arrested. However, Otis asserts that his recovery is now apparent because through medication and therapy he has abstained from inappropriate behavior for more than 6 years. In light of this new evidence about his disability, Otis argues that disbarment is not warranted.

We have not hesitated to disbar attorneys in past misconduct cases involving sexual assault. In *In re Kamin,* an attorney was disbarred for engaging in a pattern of sexual abuse against his clients' children, ages 10 through 12. 262 N.W.2d 162 (Minn.1978). *See also In re Heinze,* 233 Minn. 391, 392–94, 47 N.W.2d 123, 124–25 (Minn.1951) (disbarring an attorney who was charged with sexually inappropriate behavior with 5 boys). However, Otis has presented, by way of affidavits, new medical opinions regarding his seizure disorder and Otis has submitted evidence of his good behavior over the last 6 years. Otis requests that we consider this new information in determining his appropriate discipline.

■ When an attorney raises psychological disability as a mitigating factor contributing to misconduct, the attorney must prove by clear and convincing evidence that he or she has "a severe psychological problem, that the psychological problem was the cause of the misconduct, that he [or she] is undergoing treatment and is making progress to recover, * * * that the recovery has arrested the misconduct, and that the misconduct is not apt to recur." *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983).

■ In this case, all of the doctors who presented testimony at Otis's 1991 hearing agreed that he suffered from a seizure disorder. Astarjian testified that the disorder caused Otis's misconduct and that his disorder could be controlled through medication. Likewise, in a 1996 letter, Knesevich explains that as a result of Otis's seizures he developed an impulse control disorder that was not controlled by Otis's first seizure medication. According to Knesevich, the impulse control disorder was "the underlying cause for [Otis's] disbarment in New Hampshire." Finally, both Knesevich and Astarjian noted in 1996 letters that Otis's disorder had been under control since he changed medications in 1991, and that Otis's inappropriate behavior is not likely to recur as long as he takes his medication. Unlike Astarjian and Knesevich, Nordgren did not think that the seizure disorder caused Otis's misconduct. However, Nordgren also believed that it was unlikely that the disorder could be controlled with the new anti-seizure medication. Despite Nordgren's opinion in 1991, there is nothing in the record to indicate that Otis has had any difficulty controlling his behavior since his disbarment.

After his New Hampshire disbarment, Otis sought employment through the Division of Vocational Rehabilitation of the State of New Hampshire. He ultimately was able to secure a job in Arizona as an in-house claims adjuster for an insurance company where he is currently employed. Otis has submitted affidavits from his present work supervisor, rehabilitation counselors, friends and acquaintances to show that he has successfully

resumed a productive life and has not engaged in any professional misconduct. The affiants speak at length about Otis's ethical behavior and his caring and responsible nature. There is no evidence that Otis has engaged in any misconduct since changing medications.

The facts surrounding Otis's mitigation have significantly changed since the time the New Hampshire Supreme Court disbarred him. Two doctors agree that Otis's seizure disorder caused his misconduct. Otis's misconduct has ceased since he started taking new medication in 1991, and it does not appear likely to recur. Otis continues to take his medication and sees a psychiatrist on a regular basis in Arizona. Therefore, at this time disbarment is not necessary to protect the public. *See, e.g., In re Kimmel* 322 N.W.2d 224, 224–26 (Minn.1982) (holding that disbarment was not necessary to protect the public from an attorney who pled guilty to felonious sexual conduct involving a minor). In addition, Otis has expressed remorse for the pain he caused his clients and for the embarrassment he caused to the legal profession.

Nevertheless, we agree that the New Hampshire Supreme Court's disbarment of Otis was an appropriate sanction in 1992 and that Otis was afforded due process during his 1991 evidentiary hearing. In addition, we are troubled by Otis's failure to timely notify the Director of his New Hampshire disbarment. We emphasize that licensed Minnesota attorneys who are disciplined in other jurisdictions are required to timely notify the Director in Minnesota. *See* Rule 12(d), RLPR. In general, we have been inclined to impose reciprocal discipline in past cases. We recognize, however, that the facts of this case are unique, and require a different result than imposing identical reciprocal discipline.

Accordingly, after having carefully considered all of the circumstances of this case, we conclude that imposing the same discipline on Otis now in Minnesota as he received in New Hampshire 6 years ago would be unjust. Instead, we conclude that a 5–year suspension is appropriate. We add however, that if during his 5–year suspension Otis refrains from committing any further rule violations

and he is successfully reinstated without conditions to practice law in New Hampshire, we will also reinstate him when he files with this court a certified copy of the New Hampshire judgment reinstating him without conditions.

Accordingly, we order that,

(1) Respondent James D. Otis is indefinitely suspended from the practice of law as of the date of this opinion. Otis may apply for reinstatement under Rule 18, RLPR, after a minimum of 5 years, or when he is reinstated to practice law in New Hampshire.

(2) Otis shall pay to the Director the sum of $900 in costs and disbursements pursuant to Rule 24(a), RLPR.

PAUL H. ANDERSON, Justice (dissenting).

I respectfully dissent. I believe that the more appropriate resolution here is to remand this matter to the Minnesota Director of Professional Responsibility. On remand, the director would have the opportunity in a complete evidentiary hearing to rebut the information regarding James D. Otis's alleged rehabilitation. As it stands now, the information presented by Otis has not been appropriately developed in the record, is untested in any evidentiary proceeding, and, as such, should be irrelevant to this court's decision.

Otis was disbarred in New Hampshire for egregious sexual misconduct committed against six female clients. Otis sexually assaulted a woman, S.B., who was not only a client, but also an employee in his law firm. He made numerous inappropriate sexual remarks to other female clients as well, such as proposing to one client that they masturbate, telling another client that he would like to see her in some lingerie, and advising yet another client to come to him if her husband could not satisfy her sexually.

If this case had come before us six years ago, in 1992, when Otis was disbarred in New Hampshire, we would likely have disbarred Otis at that time based on this misconduct. However, the only reason this case did not come before us in 1992 was because Otis failed to notify the director of professional responsibility of his disbarment as required by Rule 12(d), Rules on Lawyers Professional Responsibility (RLPR). Otis should not

benefit from this failure to comply with professional responsibility requirements.

Otis claims, however, that since six years have passed, he can now prove that medication and therapy have led to his recovery. However, the majority fails to acknowledge that both the New Hampshire Committee on Professional Conduct and the New Hampshire Supreme Court have already considered and rejected Otis's argument that the disorder caused his misconduct, concluding that this argument was without merit. Because New Hampshire already considered this argument in an evidentiary hearing, we should give full faith and credit to New Hampshire's disbarment of Otis. *See* Rule 12(d), RLPR.

Moreover, this case is very similar to another discipline case, *In re Heinze,* in which we disbarred an attorney for egregious sexual misconduct. 233 Minn. 391, 47 N.W.2d 123 (Minn.1951). In *Heinze,* a substantial amount of time had lapsed between the attorney's sexual misconduct towards five young boys and the resulting discipline, and the attorney claimed that he had been rehabilitated in that time. *Id.* at 394, 47 N.W.2d at 125. There, like here, the only evidence of the attorney's rehabilitation was his own allegations, and we ordered the attorney's disbarment. *Id.* at 395–96, 47 N.W.2d at 125. Without further evidence of Otis's rehabilitation at this time, I see no reason to withhold reciprocal discipline.

I believe that, at the least, we should remand this matter to the director for an evidentiary hearing so that a referee can make findings on Otis's alleged rehabilitation. The only evidence now before this court is Otis's untested statements that he has recovered and that he has not committed further misconduct, and the affidavits that he has procured. The director should be given the opportunity to rebut Otis's alleged rehabilitation in a complete evidentiary hearing.

BLATZ, Chief Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.