In re **PETITION FOR DISCIPLINARY ACTION AGAINST Alfred PEREZ, Jr., a Minnesota Attorney, Registration No. 181353.**

No. A03–1327.

Supreme Court of Minnesota.

Nov. 18, 2004.

Kenneth L. Jorgensen, Director, Office of Lawyers Professional Responsibility, Martin A. Cole, First Assistant Director, St. Paul, MN, for Appellant.

Alfred Perez, Jr., Commerce, CA, for Respondent.

## OPINION

PER CURIAM.

On September 9, 2003, respondent Alfred Perez, Jr. admitted service of a notice of petition for disciplinary action against him. In the petition, the Minnesota Director of the Office of Lawyers Professional Responsibility alleged that Perez had failed to notify the Director of a felony conviction and subsequent disciplinary proceedings in California. As a result, the Director petitioned that we disbar Perez or impose otherwise appropriate discipline. We appointed a referee to hear this matter and to issue his recommendation for discipline. The matter is now before us on the referee's report and recommendation of disbarment. We agree with the referee's recommendation and order that Alfred Perez, Jr. be disbarred.

Alfred Perez, Jr. was born and raised in California. He obtained his undergraduate degree from Yale University and law

degree from Hastings Law School in San Francisco. After failing the California bar examination several times, Perez realized that he could represent clients in federal immigration proceedings as soon as he obtained a license to practice law from any state. Apparently, Perez had relatives in Minnesota, which led him to apply for admission here. On April 27, 1987, he was granted a license to practice law in Minnesota. He then joined the practice of a Los Angeles area organization specializing in immigration matters. In August 1988, Perez was finally granted a license to practice law in California. The following year, he requested that Minnesota place him on continuing legal education restricted status.[1]

In January 1990, Perez met lawyer Wade Shang. Shang was leaving the legal profession and offered to transfer his practice to Perez. Perez accepted the offer and took over Shang's practice in Burlingame, a city just south of San Francisco. Two months later, Perez opened a second office in the Los Angeles suburb of South Pasadena.

At the time Perez opened these two law offices, the Federal Bureau of Investigation was investigating personal injury insurance fraud schemes in California. The FBI conducted sting operations where agents posed as either uninjured accident victims seeking recovery on personal injury claims or as "cappers." Cappers are essentially client brokers, who arrange medical treatments and legal representation for personal injury claimants in return for a fee or percentage of any eventual insurance settlement. This practice is illegal in California.

As part of an FBI sting operation, agent George Henderson posed as an uninjured automobile accident victim seeking recovery on a personal injury claim. Perez had inherited Henderson's case from Shang. While working on Henderson's case, Perez met with two other FBI agents posing as cappers. Then, in September 1990, these agents referred three new clients to Perez's Burlingame office. All three clients were also undercover FBI agents. According to Perez, his assistant Dennis Santos recommended that the three clients seek treatment from a physician, Dr. Appolonia Dimapilis. Perez asserted that he never met Dimapilis in person prior to his grand jury indictment for insurance fraud. Dimapilis treated the three new clients between September 18 and October 3, 1990. It appears that with respect to at least one of these cases, Perez's law office also had a relationship with Zoila Coronel, an administrative employee of the St. Anthony Medical Clinic.

Perez struggled to maintain his law practice in Burlingame, and ultimately closed that office in March 1991. He then relocated his Burlingame practice to Santos's home. In November 1992, FBI agents searched Perez's South Pasadena office. Shortly thereafter, in March 1993, Perez also closed that office.

On October 6, 1993, Perez was charged in the Northern District of California with criminal mail fraud and money laundering in violation of Title 18, United States Code § 1341 (1993) and § 1956 (1993). A superceding indictment alleging eight counts of mail fraud and money laundering was filed on August 8, 1994. The named defendants were Perez, Dimapilis, Coronel, Perez's South Pasadena office assistant Joseph Der–Yeghianyan, Perez's Burlingame

1. Rule 12 of the Rules of the 2004 Minnesota State Board of Continuing Legal Education governs continuing legal education restricted status. A lawyer who is by choice on restricted status remains a member of the bar in good standing.

office assistant Vivian Ocampo, and the St. Jude Medical Center.

Under the indictment, the defendants were each charged with devising a scheme and artifice to defraud and obtain money by means of false and fraudulent pretenses, representations, and material omissions. More particularly, the defendants were charged with advancing personal injury claims based on false representations about the nature and extent of medical treatments rendered to supposed victims of automobile accidents. The physician and clinic administrator defendants were charged with preparing false medical bills and treatment records reflecting care never administered and expenses exceeding those actually incurred. Perez was charged with settling personal injury claims based on these false medical records.

On October 19, 1994, Perez pleaded guilty to four counts of mail fraud and was sentenced to five months of supervised home detention, three years of probation, and a fine of $3,000. Three months later, on January 20, 1995, the California State Bar suspended Perez from the practice of law in California pending final disposition of disciplinary proceedings. On April 13, 1995, the California State Bar Court issued an Order to Show Cause as to why Perez should not be disbarred. In October 1995, the California Supreme Court accepted Perez's resignation from the practice of law in California with charges pending from the California State Bar. Following Perez's resignation, the disciplinary proceedings were "dismissed without prejudice to further proceedings therein should

he hereafter seek reinstatement." At the time the disciplinary action presently before us was filed, Perez had never sought reinstatement to the California State Bar. At oral argument, however, Perez indicated that he has inquired about and intends to seek reinstatement in California once this disciplinary action is resolved.

■ As soon as Perez was subject to disciplinary charges before the California State Bar, he was required to notify the Director of Minnesota's Office of Lawyers Professional Responsibility that he was subject to public discipline in another jurisdiction. Minn. R. Lawyers Prof. Resp. 12(d) (2004).[2] Perez did not notify the Director as required. Rather, he continued to work in the legal profession as a legal assistant from 1994 to 1999. In his oral presentation before the court, Perez admitted that shortly after his probation ended in 1999, he used his Minnesota license to practice immigration law in California and Arizona and continued to do so until 2004. Because he was not licensed to practice law in any other state, Perez practiced law using exclusively his Minnesota license. We note that during this time period, Perez's Minnesota license remained on continuing legal education restricted status.

On May 22, 2000, Perez failed to appear on behalf of a client in Arizona before Immigration Judge John W. Richardson. Richardson found Perez in contempt and filed a complaint with the Director's office. In October 2000, the Director issued Perez an admonition. At that time, the Director was aware that Perez resided in California and practiced law exclusively in federal

---

2. Rule 12(d) states:

Upon learning from any source that a lawyer licensed to practice in Minnesota has been publicly disciplined or is subject to public disciplinary charges in another jurisdiction, the Director may commence an investigation and, without further proceedings, may file a petition for disciplinary action [with] this court. *A lawyer subject to such charges or discipline shall notify the Director.*

(Emphasis added.)

immigration courts. Nevertheless, the Director did not discover until July 2003 that Perez had been convicted of a felony and had resigned his California license with charges pending against him. Upon learning this information, the Director submitted this petition for disciplinary action, requesting that we disbar Perez or impose otherwise appropriate discipline.

We appointed District Judge Peter A. Hoff as referee, and he heard the matter on February 18, 2004. The referee filed his Findings of Fact, Conclusions of Law and Recommendation for Discipline on March 11, 2004, finding that Perez had been convicted of a felony, and concluding that Perez violated Minnesota Rules of Professional Conduct 3.4(c) (2004), and 8.4(b), (c), and (d) (2004).[3] The referee also found that Perez had resigned his California license with disciplinary charges pending, yet failed to notify the Director in violation of Minnesota Rules on Professional Responsibility 12(d). The referee found that Perez continued to practice immigration law in Arizona and California using his Minnesota license.

■ Based on these findings, the referee recommended that we disbar Perez. In reaching this conclusion, the referee found that although Perez offered explanations for his conduct, he did not produce evidence of substantial mitigation. Based on the referee's recommendation and in accordance with Minnesota Rules on Lawyers Professional Responsibility 16(e), we suspended Perez from the practice of law in Minnesota on April 8, 2004, pending final determination of the disciplinary proceedings. Because Perez did not order a transcript of the hearing, the referee's findings of fact and conclusions are conclusive. Minn. R. Lawyers Prof. Resp. 14(e) (2004).

## I.

■ In considering a petition for disciplinary action against a lawyer, we have the ultimate responsibility for determining the appropriate sanction. *In re Oberhauser,* 679 N.W.2d 153, 159 (Minn.2004). But we will not set aside the findings and conclusions of a referee unless they are clearly erroneous. *Id.* The purposes of disciplinary sanctions for professional misconduct are to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined lawyer as well as by other lawyers. *Id.*

Perez asserts that the imposition of identical reciprocal discipline by this court would be unjust and substantially different from what is warranted in Minnesota. Thus, we first consider the propriety of the imposition of reciprocal discipline in Minnesota based on Perez's misconduct in California. After Perez's felony conviction, the California Supreme Court accepted his resignation from the practice of law with charges pending before the California State Bar. Following his resignation, the disciplinary proceedings were dismissed without prejudice. When another jurisdiction disciplines a lawyer, we will impose an identical disciplinary measure upon that lawyer unless the procedures in that jurisdiction were unfair or the imposition of the

---

**3.** Rule 3.4(c) states:
A lawyer shall not: * * * (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.
Rule 8.4(b), (c) and (d) states:
It is professional misconduct for a lawyer to * * * (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice.

same discipline would be unjust or substantially different from the discipline warranted in Minnesota. Minn. R. Lawyers Prof. Resp. 12(d).[4]

 We conclude that this present matter is not a reciprocal discipline proceeding. We reach this conclusion because imposition of identical discipline to that imposed in California is impossible. Minnesota does not allow a lawyer to resign with charges pending. We have stated:

> [T]his court will not entertain petitions for resignation while disciplinary petitions alleging serious misconduct are pending. When a lawyer's flagrant violations of professional responsibilities justify disbarment, resignation will not be allowed. To permit a lawyer to resign when disbarment is clearly called for would not serve the ends of justice nor deter others from legal misconduct.

*In re McCoy*, 447 N.W.2d 887, 891 (Minn. 1989) (citations omitted).

Because we conclude that reciprocal discipline is not applicable in this case, we need not consider Perez's argument that the imposition of identical discipline by this court would be unjust and unwarranted in light of the discipline he received in California. Therefore, we must independently evaluate Perez's conduct to determine whether disciplinary sanctions should be imposed.

## II.

 We impose disciplinary sanctions on a case-by-case basis, considering the specific acts of misconduct and any aggravating or mitigating circumstances, while looking to similar cases for guidance. *In re Koss*, 611 N.W.2d 14, 16 (Minn.2000). Here, Perez engaged in felony-level criminal conduct within his law practice that involved fraud and dishonesty. On October 19, 1994, Perez pleaded guilty to four counts of felony mail fraud in violation of 18 U.S.C. § 1341 and § 1956 and was convicted. A lawyer's criminal conviction is "conclusive evidence that the lawyer committed the conduct for which the lawyer was convicted." Minn. R. Lawyers Prof. Resp. 19(a). Therefore, Perez's felony-level criminal conduct is conclusively established.

 We view felony convictions as serious misconduct, and we have disbarred lawyers convicted of a felony absent significant mitigating factors. *In re Anderley*, 481 N.W.2d 366, 369 (Minn.1992). In the case of *Koss*, we disbarred a lawyer convicted of racketeering and mail fraud in California. 611 N.W.2d at 14. We approved the recommendation of disbarment for a lawyer who, along with other misconduct, committed felony mail fraud in his representation of a trust. *In re Klane*, 659 N.W.2d 701, 701 (Minn.2003). We disbarred a lawyer convicted of racketeering, aiding and abetting, interstate transportation of property obtained by fraud, and mail fraud. *In re Holman*, 322 N.W.2d

---

4. Rule 12(d) provides:
 If the lawyer has been publicly disciplined in another jurisdiction, this Court may issue an order directing that the lawyer and the Director inform the court within thirty (30) days whether either or both believe the imposition of the identical discipline by this Court would be unwarranted and the reasons for that claim. Without further proceedings this court may thereafter impose the identical discipline unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in Minnesota. If this court determines that imposition of the identical discipline is not appropriate, it may order such other discipline or such other proceedings as it deems appropriate.

726, 726 (Minn.1982). We also disbarred a lawyer convicted of interstate transportation of stolen goods, mail fraud, conspiracy, and theft of property. *In re Kraemer,* 361 N.W.2d 402, 402–03 (Minn.1985). And finally, in the case of *In re Ostfield,* we disbarred a lawyer convicted of mail fraud and tax evasion. 349 N.W.2d 274, 275 (Minn.1984).

■ We may stop short of disbarring a lawyer convicted of a felony if it is shown that a variation from that usual disciplinary sanction is appropriate. In order to determine whether a variation is appropriate, we consider the aggravating and mitigating circumstances present in the individual case. *Anderley,* 481 N.W.2d at 369. For example, in a case where a lawyer was disbarred in New Hampshire for engaging in improper sexual behavior toward six of his female clients but failed to notify Minnesota authorities of his disbarment, we suspended the lawyer for five years due to significant mitigating circumstances. *In re Otis,* 582 N.W.2d 561, 561–62 (Minn.1998). In *Otis,* the lawyer claimed that he had a psychological condition that caused his misconduct, and he established that he had not engaged in any inappropriate behavior since he began treatment six years before the Minnesota disciplinary hearing. *Id.* at 564. The lawyer had not engaged in the practice of law since his disbarment in New Hampshire. *Id.* Based on these circumstances, we concluded that disbarment was not an appropriate sanction. *Id.* at 565.

■ Perez argues that, similar to *Otis,* there are factors that mitigate the severity of his misconduct. He argues that he has already been punished through the loss of his California license and federal conviction and that a substantial amount of time has passed since he was disciplined in California. But Perez cannot and should not benefit from the 10–year passage of time since his conviction as there is no statute of limitations in lawyer discipline proceedings. For example, a lawyer was disbarred in Minnesota in 2000 after a similar 1991 mail fraud conviction in California. *Koss,* 611 N.W.2d at 14. Perez also describes in detail the circumstances of his personal life, and how he and his family would be affected by his disbarment. But the referee found that while Perez offered explanations for his misconduct, he fell short of providing mitigating factors significant enough to allow him to avoid disbarment. Moreover, this matter is distinguishable from *Otis.* Otis claimed psychological mitigation, while Perez makes no such claim. Also, Otis did not practice law after he was disbarred in New Hampshire, whereas Perez practiced law using his Minnesota license for five years after he resigned his California license.

■ More significantly, we conclude that there are aggravating factors that weigh in favor of disbarment. The nature of the offense was serious. We note that in the plea agreement, the parties stipulated to an upward adjustment from a base offense level of six to an adjusted level of fourteen. The parties stipulated that the basis for the upward adjustment was that the fraud scheme to which Perez pleaded guilty had an intended loss of more than $20,000, multiple victims, and involved an "abuse of a position of trust." The final offense level was reduced to twelve, but only provided that Perez "clearly demonstrate a recognition and affirmative acceptance of responsibility for his criminal conduct."

In both his brief and his oral presentation, Perez failed to indicate a real acceptance of responsibility for his behavior. He failed to recognize the gravity of his criminal conduct, maintaining that there were no real victims and no money was

lost because the clients were FBI agents and the insurance companies had set money aside for the sting operation. He also maintained that he was an innocent party, and argued that his guilty plea leading to conviction was a result of poor advice from his lawyer. Further, he denied that he was aware that he was required under Rule 12(d) to notify the Director after he became subject to discipline in California.

We also note that Perez's conduct occurred within the practice of law. When a lawyer's felony criminal misconduct occurs within the practice of law, we are more likely to disbar that lawyer. In *Anderley,* we disbarred a lawyer convicted of mail fraud for defrauding an insurance company client. 481 N.W.2d at 366. In *In re Shoemaker,* we disbarred a lawyer with a felony theft conviction for misappropriation from his former law firm and its clients. 518 N.W.2d 552, 552 (Minn.1994). Finally, in *In re Benson,* we disbarred a lawyer convicted of felony theft by swindle and perjury arising out of the lawyer's dealings with client assets. 431 N.W.2d 120, 124–25 (Minn.1988). Here, Perez used his Minnesota license exclusively for five years after he resigned his California license in order to practice immigration law in California and Arizona. Thus, he clearly benefited from his failure to notify the Director as required by Rule 12(d).

Based on our review of the record, we conclude that there is no reason ·to set aside the referee's findings and conclusions on the grounds that they are clearly erroneous. Perez's felony conviction establishes serious misconduct, and the absence of mitigating factors as well as the presence of aggravating factors weigh heavily against him. Accordingly, we conclude that disbarment is the appropriate sanction.

We order that Alfred Perez, Jr. be, and hereby is, disbarred.

ANDERSON, G. BARRY, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.