STATE OF MINNESOTA

IN SUPREME COURT

A24-0417

Original Jurisdiction

Per Curiam

In re Petition for Disciplinary Action against
Wesley R. Martins, a Minnesota Attorney,
Registration No. 0068214.

Filed: August 13, 2025
Office of Appellate Courts

_____

Susan M. Humiston, Director, Joseph Ambroson, Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Wesley R. Martins, Duluth, Minnesota, pro se.

_____

S Y L L A B U S

1.      Tribal courts are jurisdictions for the purpose of authorizing reciprocal attorney discipline under Rule 12(d), Rules on Lawyers Professional Responsibility.

2.      The discipline imposed by the Mille Lacs Band of Ojibwe on respondent Wesley R. Martins—specifically a one-year suspension from the practice of law, a public reprimand, and the requirement of a public apology—is substantially different than the discipline warranted in the State of Minnesota for Martins's misconduct.

3.      A public reprimand is the appropriate discipline for Wesley R. Martins's misconduct before the Mille Lacs Band of Ojibwe Court of Central Jurisdiction.

1

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (the Director) filed a petition under Rule 12(d) of the Rules on Lawyers Professional Responsibility (RLPR) requesting that we impose reciprocal discipline against respondent Wesley R. Martins. In August 2023, the courts of the Mille Lacs Band of Ojibwe, a federally recognized Indian tribe, determined that Martins committed professional misconduct before the courts of the Mille Lacs Band of Ojibwe Court of Central Jurisdiction. The Mille Lacs Band of Ojibwe Court of Appeals suspended Martins from the practice of law for one year, issued a public reprimand, and required Martins to make a public apology to the presiding judge in the matter in which Martins's misconduct took place. Because this discipline is substantially different than the discipline warranted in the State of Minnesota for Martins's misconduct, we decline to impose identical discipline, and instead impose a public reprimand.

## FACTS

Rule 12(d), RLPR, states that "a final adjudication in another jurisdiction that a lawyer had committed certain misconduct shall establish conclusively the misconduct for purposes of disciplinary proceedings in [the State of] Minnesota," unless we determine otherwise. The following facts were established through Martins's disciplinary proceedings before the Mille Lacs Band of Ojibwe Court of Appeals (hereinafter, "Mille Lacs Band Court of Appeals").

Wesley R. Martins was admitted to practice law in the State of Minnesota in 1970 and has no prior discipline in Minnesota state court. Martins's discipline in this case arose from his conduct in one client matter before the Mille Lacs Band of Ojibwe Court of Central Jurisdiction.

On May 8, 2023, Martins was scheduled to appear remotely at a 1:30 p.m. hearing before the Mille Lacs Band of Ojibwe District Court. Martins did not appear until 1:52 p.m., and when he arrived, he informed the court that he was not ready to proceed. The court continued the matter, and scheduled a remote trial on the merits for May 24 at 1:30 p.m. On that later trial date, Martins was once again late, not appearing until 1:37 p.m. Martins requested that the court place him in a virtual break-out room with his client. At some point after the court did so, Martins left the break-out room to make a remote appearance in a different court, without advising the presiding judge that he was leaving the break-out room or the remote hearing altogether. Martins ultimately returned to the virtual hearing before the Mille Lacs Band Court at 2:50 p.m., but the court had already adjourned due to Martins's absence. The matter was rescheduled for a second time due to Martins's conduct.

The presiding district court judge filed two ethics complaints with the Mille Lacs Band Court of Appeals, one for each hearing at which Martins arrived late. Martins submitted a written response to the complaints, in which he acknowledged that he was late for court on both May 8 and May 24, but argued that he had simply overscheduled himself, and that "[i]f an ethical violation is involved here, it comes on the back of trying to serve the needs of as many of our communit[ies] as possible." Martins stated that the complaints

3

did not show "that the Court here was placed at some disadvantage" because of his conduct. Martins also stated that he believed the presiding judge should have handled the matter privately with Martins rather than filing a disciplinary complaint. The Mille Lacs Band Court of Appeals held an in-person hearing on the ethics complaints on August 15, 2023. Despite having been mailed notice of the hearing, Martins did not appear.

On August 28, the Mille Lacs Band Court of Appeals issued an order disciplining Martins. The court rejected Martins's assertion that the disciplinary action was unnecessary, stating that Martins's conduct required the district court judge to file a complaint under Mille Lacs Court of Central Jurisdiction Rule 50 (which incorporates the Minnesota Rules of Professional Conduct). The court also disagreed with Martins's assertion that there was no harm to his client's or the tribal court's interests. The court explained that beyond his lack of preparedness, "[e]xacerbating this matter further is that . . . Martins failed to appear before [the Mille Lacs Band Court of Appeals] to explain his conduct, despite being given a chance to do so," which conveyed "disrespect to [the Mille Lacs Band Court of Appeals] and its processes."

The Mille Lacs Band Court of Appeals found that Martins's conduct violated Minn. R. Prof. Conduct 1.3, which requires diligent client representation,[1] as well as Minn. R. Prof. Conduct 1.1, which requires competent client representation. The court concluded that the appropriate sanctions were: (1) a public reprimand; (2) a one-year suspension from practice before Mille Lacs Band courts; and (3) a public apology to the presiding judge for

---

[1] *See* Minn. R. Prof. Conduct 1.3, comment 2 (stating that a "lawyer's workload must be controlled so that each matter can be handled competently").

implying that the judge "acted with some ulterior motive in bringing forward his complaint." Martins did not report the discipline to the Director's office. Rather, the Director's office learned from the Mille Lacs Band in October 2023 that Martins had been disciplined.

## ANALYSIS

Rule 12(d), RLPR, allows the Director to petition for reciprocal discipline based upon the knowledge "that a lawyer licensed to practice in Minnesota has been publicly disciplined . . . in another jurisdiction." Rule 12(d) provides that we may "impose the identical discipline [as the originating jurisdiction] unless it appears that discipline procedures in the other jurisdiction were unfair, or the imposition of the same discipline would be unjust or substantially different from discipline warranted in [the State of] Minnesota." If we decline to impose identical discipline, we may impose a different sanction. *In re Marcellus*, 13 N.W.3d 679, 685 (Minn. 2024); Rule 12(d), RLPR. In making the determination regarding reciprocal discipline, we are guided by the principle that the purpose of attorney discipline is "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn. 2024). With that purpose in mind, we turn to the questions posed by the request for reciprocal discipline in this case.

### I.

The first question we address is whether the tribal courts of the Mille Lacs Band of Ojibwe are a "jurisdiction" for the purposes of reciprocal discipline within the language of Rule 12(d), RLPR. Rule 12(d) provides that when a Minnesota-licensed lawyer "has been

5

publicly disciplined or is subject to public disciplinary charges in *another jurisdiction*, the Director . . . may file a petition for disciplinary action" with our court.  (Emphasis added.)  No party argues that the Mille Lacs Band of Ojibwe Court of Central Jurisdiction is not a jurisdiction for Rule 12(d) purposes.  But because we have never imposed reciprocal discipline from a disciplinary order originating in a tribal court, we take this opportunity to definitively state that tribal courts are jurisdictions for the purposes of reciprocal discipline.

While we have not before considered a reciprocal discipline case originating in a tribal court, we have imposed attorney discipline arising from attorney misconduct before tribal courts based on petitions by the Director.  *See, e.g.*, *In re Michael*, 836 N.W.2d 753, 760–68 (Minn. 2013) (imposing a 30-day suspension and two years' probation when an attorney violated Minn. R. Prof. Conduct 3.1, 3.3, 3.4, and 8.4 in a child custody case before a court of the Prairie Island Indian Community).  Moreover, this court regularly imposes reciprocal discipline originating from a variety of jurisdictions beyond the 50 states—such as federal courts, *In re Harmon*, 972 N.W.2d 880, 881 (Minn. 2022) (order), and the U.S. Patent and Trademark Office, *In re Stewart*, 899 N.W.2d 476, 483 (Minn. 2017).  Given the purposes of our reciprocal discipline procedures and the status of Indian tribes as sovereign jurisdictions within the United States,[2] we conclude here that tribal

---

[2]     Indian tribes are "distinct, independent political communities exercising sovereign authority."  *United States v. Cooley*, 593 U.S. 345, 349 (2021) (internal quotation marks omitted).  *See also Cohen's Handbook of Federal Indian Law*  256 (2024 ed.) (explaining that "[t]ribes have plenary and exclusive power over their members and their territory subject only to limitations imposed by federal law.").

6

courts are jurisdictions within Rule 12(d), RLPR, and reciprocal discipline can be imposed arising from a disciplinary order issued by a tribal court.

## II.

## A.

We now turn to the question of whether to impose reciprocal discipline for Martins's misconduct before the Mille Lacs Band Court. In reciprocal discipline cases we begin by asking whether the originating jurisdiction's disciplinary procedures were fair. *See* Rule 12(d), RLPR (stating that we may "impose the identical discipline unless it appears that discipline procedures in the other jurisdiction were unfair"). We impose reciprocal discipline only if the originating jurisdiction's disciplinary proceedings were "consistent with fundamental fairness and due process." *In re Hawkins*, 834 N.W.2d 663, 668 (Minn. 2013) (citation omitted) (internal quotation marks omitted).

Martins contends that the Mille Lacs Band Court of Appeals' procedures were unfair. Martins alleges that he never received notice about the in-person hearing, in part due to staffing issues in his office. Martins also notes that the letter notifying him of the hearing was sent by "regular post" despite the order of the Mille Lacs Band Court of Appeals stating that Martins was "served by certified mail with this Court's order finding probable cause to proceed on the complaint but failed to appear for the hearing." *In re Martins*, No. 2023 App 0006, Notice of Disciplinary Action, (Mille Lacs Band of Ojibwe Tribal App. Ct., filed Aug. 28, 2023).

The Director responds that the disciplinary procedures of the Mille Lacs Band were fair. The Director emphasizes that the Mille Lacs Band Court of Appeals provided Martins

7

with notice of the disciplinary complaint and provided Martins a chance to respond in writing—which Martins utilized. Martins then was given mail notice of the in-person hearing on his disciplinary matter. The Director states that these procedures satisfy our core fairness concerns in attorney discipline cases: "if the lawyer being disciplined received notice of the allegations against him" and if they were "provided an opportunity to respond to those allegations." *In re Schmidt*, 586 N.W.2d 774, 776 (Minn. 1998).

We conclude that the Mille Lacs Band's disciplinary procedures were fair. While it is regrettable that Martins did not realize he had been notified about the hearing until after it had occurred, "[w]e have repeatedly determined that where an attorney was properly served with notice as to the proceedings against him—regardless of his response—then due process has been satisfied." *In re Baird*, 18 N.W.3d 529, 537 (Minn. 2025). Martins's argument regarding the specific type of mail through which notice was provided is also unavailing. Mille Lacs Band Rule of Court 50(e) does not require notice to be provided via "certified mail," but rather states that notice by "first-class mail shall be sufficient." Martins admits that notice of the hearing was served on him by first-class mail. Therefore, even if the Mille Lacs Band Court of Appeals' statement that Martins was served by *certified* mail was incorrect, service by "regular post" would have satisfied the notice requirements of the Mille Lacs Band's procedural rules. Because Martins does not dispute that his office received notice of the disciplinary proceedings against him, and therefore that he was provided the chance to respond to the allegations, we conclude that the Mille Lacs Band's disciplinary proceedings were fair.

## B.

Having determined that the originating jurisdiction's disciplinary proceedings were fair, we next ask whether the discipline imposed by the Mille Lacs Band of Ojibwe was "unjust or substantially different from discipline warranted in [the State of] Minnesota." Rule 12(d), RLPR. We recently clarified that whether discipline is "unjust" is a separate question from the "substantially different" inquiry. *See In re Jensen*, 12 N.W.3d 731, 737 (Minn. 2024).

We have found reciprocal discipline to be "unjust" in only one case. *See In re Otis*, 582 N.W.2d 561, 565 (Minn. 1998). In *Otis*, an attorney had been disbarred by the New Hampshire Supreme Court "due to his improper sexual behavior toward 6 of his female clients." *Id.* at 561–62. However, in the intervening period between Otis's misconduct and our court's consideration of the Director's petition for reciprocal discipline, doctors diagnosed Otis with a seizure disorder. *Id.* at 562. The doctors testified that the seizure disorder caused Otis's misconduct and that "his disorder could be controlled through medication." *Id.* at 564. Otis began taking medication and ultimately secured a new job in Arizona and "successfully resumed a productive life." *Id.* at 564–65. Otis did not engage in any further professional misconduct after beginning medication. *Id.* at 565. We therefore held that "imposing the same discipline on Otis now in Minnesota as he received in New Hampshire 6 years ago would be unjust" and instead concluded a 5-year suspension was appropriate. *Id.* at 565. We have since explained that *Otis* stands for the proposition that reciprocal discipline is "unjust" under Rule 12(d), RLPR, "if the lawyer shows that the circumstances that caused the misconduct have changed (especially if evidence of the

9

change was not available in the earlier disciplinary proceeding) and the discipline imposed in the other jurisdiction is no longer necessary to protect the public." *Jensen*, 12 N.W.3d at 738–39.

The Director argued in her briefing—which was filed before we issued our opinion in *Jensen*—that identical reciprocal discipline would be "unjust." But at oral argument, counsel for the Director stated that considering *Jensen*, the Director's position is that identical reciprocal discipline in this case would not be "unjust." We agree. Because no new evidence has been presented demonstrating that circumstances have changed since the original discipline such that Martins's discipline is no longer necessary to protect the public, identical reciprocal discipline would not be unjust under Rule 12(d), RLPR.

C.

Our final question is whether a one-year suspension from the practice of law, a public reprimand, and the requirement of a formal apology is "substantially different from discipline warranted in [the State of] Minnesota." Rule 12(d), RLPR. This is a two-step inquiry. First, we consider what discipline or range of discipline we would impose if we were deciding Martins's case in the first instance—then we ask whether the originating jurisdiction's discipline is substantially different from the discipline or range of discipline we would impose. *See, e.g.*, *In re Rosenberg*, 18 N.W.3d 71, 77–79 (Minn. 2025).

Four factors guide our assessment of what discipline we would impose if we were presented with the facts of Martins's case in the first instance: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Ulanowski*, 800 N.W.2d 785, 799

(Minn. 2011) (quoting *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007)). We also consider any aggravating and mitigating factors. *Id*.

Beginning with the nature of the misconduct, the Mille Lacs Band Court of Appeals found that Martins violated Minn. R. Prof. Conduct 1.1 (requiring "competent representation") and 1.3 (requiring "reasonable diligence and promptness") by arriving late and unprepared to one meeting, then arriving late and unprepared to a second meeting, which he then left without the court's permission to attend another hearing before another court. In a reciprocal discipline proceeding, "[u]nless [we] determine[] otherwise, a final adjudication in another jurisdiction that a lawyer had committed certain misconduct shall establish conclusively the misconduct for purposes of disciplinary proceedings in [the State of] Minnesota." *See* Rule 12(d), RLPR.

Because this is Martins's first disciplinary action in a 55-year legal career, and Martins's misconduct only pertains to one client matter and two hearings, there is no showing of "cumulative" harm here whatsoever. *See In re Pearson*, 888 N.W.2d 319, 322 (Minn. 2016) (describing that we "distinguish between a brief lapse in judgment or a single, isolated incident and multiple instances of misconduct occurring over a substantial amount of time" (citation omitted) (internal quotation marks omitted)). Furthermore, Martins correctly notes that the record lacks evidence of any significant harm to the public or the legal profession stemming from Martins's misconduct. *See In re Nathanson*, 812 N.W.2d 70, 79 (Minn. 2012) ("The impact of the harm to the public and the profession requires consideration of the number of clients harmed and the extent of the clients' injuries." (citation omitted) (internal quotation marks omitted)).

The facts discussed in the order of the Mille Lacs Band Court of Appeals indicate that two aggravating factors are present here. First, while Martins maintains that he simply did not know about his disciplinary hearing, his failure to appear before the Mille Lacs Band Court of Appeals shows a lack of cooperation that this court considers an aggravating factor. *See In re Udeani*, 945 N.W.2d 389, 399 (Minn. 2020) (concluding that the lawyer's "failure to cooperate in the disciplinary proceeding before this court—i.e., his failure to appear for a scheduling conference and his failure to adequately respond to the Director's discovery request—[was] an aggravating factor"); *In re McGee*, 865 N.W.2d 70, 74 (Minn. 2015) (concluding that a lawyer's failure to cooperate in another jurisdiction's disciplinary proceedings by "failing to appear at a hearing before the referee" and failing to respond to a motion was an aggravating factor for purposes of imposing reciprocal discipline). Second, while "lack of remorse" is not an aggravating factor in attorney discipline cases "when the attorney is merely asserting a good-faith defense," *Jensen*, 12 N.W.3d at 742, Martins's refusal to acknowledge that his conduct violated the rules of professional conduct, and his allegation that the presiding judge had an ulterior motive in filing the complaints against him, were not good-faith defenses. For that reason, we consider Martins's lack of remorse to be an aggravating factor.[3] *See In re Winter*, 770 N.W.2d 463,

---

[3] At oral argument before this court, Martins acknowledged that he "messed up" in arriving late, leaving the hearing early, and failing to appear at the in-person hearing. We acknowledge Martins's expression of remorse, and appreciate the unique challenges faced by attorneys such as Martins and other legal professionals who, daily, are attempting to understand and fill the "rural justice gaps" in areas of our State and in indigenous communities where legal professionals are not plentiful but the needs of clients are great. *See* Michelle Statz, The Scandal of Particularity: A New Approach to Rural Attorney

468 (Minn. 2009) (concluding that efforts to "minimize . . . misconduct by arguing that it is not as bad as other misconduct" demonstrate a failure to appreciate the severity of misconduct, and constitute an aggravating factor).

We note further that while Martins relies on his extensive experience practicing law without receiving any prior attorney discipline as a reason to impose less discipline here, ethical behavior in conformance with the Minnesota Rules of Professional Conduct is expected from all attorneys. The lack of a disciplinary history in an attorney's career does not constitute a mitigating circumstance in an attorney discipline proceeding, but instead it constitutes the absence of the aggravating factor of an attorney's disciplinary history. *See In re Nett*, 839 N.W2d 716, 722 (Minn. 2013) ("We have held that the lack of a disciplinary history . . . do[es] not constitute [a] mitigating circumstance[]."); *In re Jones*, 834 N.W.2d 671, 680 (Minn. 2013) ("As our recent precedent is clear that compliance with professional rules and standards is expected . . . Jones' lack of prior discipline was not a mitigating factor."); *In re Aitken*, 787 N.W.2d 152, 162 (Minn. 2010) ("Although we consider an attorney's disciplinary history as an aggravating factor, an attorney's lack of disciplinary history is not a mitigating factor but is instead the absence of an aggravating factor." (internal citation omitted)).

---

Shortages and Access to Justice, 60 S.D. L. Rev. 396, 407 (2024) ("Rural attorneys were deeply attuned to the toll of unresolved trauma, untreated addiction, and the inability to access meaningful justice support systems on community members—and likewise on their own work and lives.") However, Martins unfortunately did not show remorse or acknowledge his misconduct during his disciplinary proceedings in the courts of the Mille Lacs Band, which constitutes an aggravating factor for the purposes of our reciprocal discipline analysis.

13

Considering Martins's misconduct and the aggravating factors, and in view of our analogous case law, we agree with the Director's recommendation that a public reprimand is the discipline warranted in the State of Minnesota for Martins's misconduct. In *In re Wood*, 917 N.W.2d 421, 421 (Minn. 2018) (order), we publicly reprimanded an attorney and imposed two years of supervised probation when an attorney violated Minn. R. Prof. Conduct 1.3, 1.4(a)(2)–(4), 3.2, 3.4(c), 8.1(b), and 8.4(d) by failing to provide competent and diligent representation in one matter, failing to provide diligent representation and communicate with a client in a second matter, and failing to cooperate with the Director's investigation. And in *In re Swanson*, 709 N.W.2d 623, 623 (Minn. 2006) (order), we imposed a public reprimand and two years of supervised probation for failing to provide competent and diligent representation in violation of Minn. R. Prof. Conduct 1.1 and 1.3, as well as failing to cooperate with the Director's investigation, in violation of Minn. R. Prof. Conduct 8.1(b). Given the lack of a continuing pattern of misconduct, and our view that Martins's misconduct here is less serious than cases in which we have required a period of probation, we decline to adopt the Director's recommendation to impose one year of supervised probation. We do not view any period of probation as warranted on these facts. But because of the aggravating factors in this case, we conclude Martins's misconduct requires more than private discipline alone.[4]

---

[4] The Director states that the discipline warranted in the State of Minnesota in this case ranges from private discipline to a public reprimand accompanied by supervised probation. The Director ultimately recommends the court impose public discipline for three reasons: (1) Martins's "non-cooperation with the discipline process"; (2) Martins's "responses showed a failure to appreciate the nature of his rule violations"; and (3) a larger

14

Having determined that a public reprimand is the discipline warranted under our case law for Martins's misconduct, we proceed to step two: whether the Mille Lacs Band's discipline of a one-year suspension, a public reprimand, and a required public apology is "substantially different from discipline warranted in [the State of] Minnesota." *See* Rule 12(d), RLPR. Our inquiry here is not "whether we might have imposed different discipline had [the lawyer's] disciplinary proceedings originated in [the State of] Minnesota." *See In re Overboe*, 867 N.W.2d 482, 487 (Minn. 2015). Rather, "the word 'substantial' must carry some meaning," and the attorney must show that the originating jurisdiction's discipline is not only "outside the range of discipline we would impose, but that it is substantially so." *Jensen*, 12 N.W.3d at 740. In prior reciprocal discipline cases, we have held that a nine-month suspension "is substantially different from" a public reprimand, *In re Thompson*, 916 N.W.2d 687, 687–88 (Minn. 2018) (order), and that "a 1-year-and-1-day suspension,

departure from the Mille Lacs Court of Appeals' discipline would "not be in keeping with the comity principal [sic] underlying Rule 12, RLPR, in the Director's view." Martins's non-cooperation and lack of remorse are aggravating factors that we can consider. *See Udeani*, 945 N.W.2d at 399; *Winter*, 770 N.W.2d at 468. But we clarify here that the Director's arguments relating to "comity" are not a relevant part of our analysis in reciprocal discipline cases. The Director seems to argue that there is a general rule in reciprocal discipline cases that if this court imposes reciprocal discipline that is not identical to the discipline imposed by the originating jurisdiction, we should depart from the originating jurisdiction's discipline as little as possible. The Director cites no support for that proposition, and we decline to adopt this analytical principle. When determining whether reciprocal discipline would be "substantially different from [the] discipline warranted in Minnesota," we must first determine what the appropriate level of discipline would be in Minnesota, which does not involve consideration of the originating jurisdiction's chosen discipline. Only once that inquiry is complete do we compare the discipline warranted in Minnesota with the discipline imposed by the originating jurisdiction, and determine if there is a substantial difference between the two. *See, e.g.*, *Lindberg*, 980 N.W.2d at 576.

15

with 9 months served and the remainder stayed upon successful completion of probation, is substantially different from" a public reprimand, *In re Donohue*, 922 N.W.2d 207, 207 (Minn. 2019) (order). Here, the one-year suspension and required public apology imposed by the Mille Lacs Band are "substantially different" than the discipline warranted in the State of Minnesota, which is a public reprimand alone.

III.

Because the discipline imposed by the Mille Lacs Band is substantially different than the discipline warranted in the State of Minnesota, we therefore decline to impose identical reciprocal discipline pursuant to Rule 12(d), RLPR. Instead, we conclude the appropriate discipline that is warranted in the State of Minnesota is a public reprimand.

**CONCLUSION**

For the foregoing reasons, Wesley R. Martins is publicly reprimanded. Respondent must pay $900 in costs under Rule 24(a), RLPR.

Publicly reprimanded.

16