In re Petition for DISCIPLINARY AC-TION AGAINST William C. PUGH, a Minnesota Attorney, Registration No. 195261.

No. C7–97–1350.

Supreme Court of Minnesota.

March 2, 2006.

## OPINION

### PER CURIAM.

William C. Pugh was admitted to the practice of law in Minnesota on October 28, 1988. On July 25, 1997, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action seeking to have Pugh disbarred based on Pugh's misappropriation of over $1 million from a real estate closing company he owned. As a result of his misappropriation, Pugh was indicted in federal court on 34 felony counts, including mail fraud, wire fraud, interstate transportation of money obtained by fraud, money laundering, concealment of material facts, and causing the unlawful act of another. A jury found Pugh guilty of 33 of the counts in the indictment. In addition to the director filing the petition for disciplinary action on July 25, the director and Pugh entered into a stipulation suspending Pugh from the practice of law. The stipulation provided that Pugh was not required to file an answer to the petition until appellate review of his criminal conviction was completed. Pursuant to the stipulation, we suspended Pugh from the practice of law and extended the time for Pugh to file his answer until appellate review of his conviction was completed.

Pugh's appeal of his convictions was unsuccessful and, in 2003, the director moved this court to appoint a referee for a hearing. The Honorable Norbert P. Smith was appointed as referee, and a hearing was held on July 12, 2005. At the hearing, the director requested Pugh's disbarment for violating Minn. R. Prof. Conduct 8.4(b) and (c). Neither the director nor Pugh called witnesses.

The referee found that Pugh owned and operated Sierra Title Company, a real estate closing company. Sierra Title Company held funds and insurance premiums that belonged to buyers and sellers of real estate, lenders, and a title insurer. The funds were to be distributed as part of real estate closings. Pugh misappropriated over $1 million of these funds, which he used to finance his business interests and to enhance his personal lifestyle.[1]

Pugh was ultimately indicted on 34 felony counts. On June 30, 1997, a jury found Pugh guilty of 33 of the charged counts.[2] He was sentenced to 78 months' imprisonment and was ordered to pay $1,245,000.00 in restitution to Commonwealth Land Title Insurance Co. On direct appeal, the United States Court of Appeals for the Eighth Circuit affirmed 32 of Pugh's convictions. *United States v. Pugh,* 151 F.3d 799, 800 (8th Cir.1998). Finally, in 2003, the Eighth Circuit remanded the case to a magistrate judge for a hearing regarding the issue of the amount of restitution Pugh owed. *United States v. Pugh,* 75 Fed. App'x 546, 547 (8th Cir.2003). In doing so, the court emphasized that the "hearing will not be an opportunity for Pugh to challenge the validity of the underlying conviction or restitution obligation." *Id.*

The referee further found that Pugh's argument that "his actions were common business practice * * * is an improper attempt to re-litigate the underlying conviction in disregard of Rule 19, Rules on Lawyers Professional Responsibility (RLPR)." The referee concluded that Pugh engaged in misconduct in violation of Minn. R. Prof. Conduct 8.4(b) and (c) by

committing criminal acts that reflect adversely on a lawyer's honesty, trustworthiness, and fitness as a lawyer. Therefore, the referee recommended that Pugh be disbarred from the practice of law and pay $900 in costs plus disbursements.

■ Neither the director nor Pugh disputes the referee's findings and conclusions. Moreover, Pugh admits that he committed the acts underlying his convictions.[3] Therefore, the only issue presented in this case is the appropriate discipline. In considering a petition for disciplinary action, we have the ultimate responsibility for determining the appropriate sanction. *In re Oberhauser,* 679 N.W.2d 153, 159 (Minn.2004). "The purposes of disciplinary sanctions for professional misconduct are to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *Id.* (citing *In re Daffer,* 344 N.W.2d 382, 385 (Minn.1984)).

■ We consider four factors in determining the appropriate sanction: (1) the nature of the misconduct; (2) the cumulative weight of the violations of the rules of professional conduct; (3) the harm to the public; and (4) the harm to the legal profession. *Id.* Appropriate sanctions are determined on a case-by-case basis after considering both aggravating and mitigating circumstances. *In re. Wentzell,* 656 N.W.2d 402, 408 (Minn.2003). We look to similar cases for guidance in setting the proper discipline. *In re Thedens,* 557 N.W.2d 344, 347 (Minn.1997).

1. Pugh's indictment indicates that he misappropriated funds from approximately November 1990 until approximately January 1994.

2. The last charge was dismissed by the prosecution.

3. While Pugh ordered a transcript of the referee hearing, with the result that the referee's findings and conclusions are not deemed conclusive under Rule 14(e), RLPR, he has not challenged any of the referee's findings of fact or conclusions of law in these proceedings.

Generally, felony convictions warrant "disbarment, unless significant mitigating factors exist." *In re Anderley*, 481 N.W.2d 366, 369 (Minn.1992). The ABA Standards for Imposing Lawyer Sanctions state that disbarment is appropriate when "a lawyer engages in serious criminal conduct, a necessary element of which includes * * * misrepresentation, fraud, extortion, misappropriation, or theft." ABA Standards for Imposing Lawyer Sanctions, Rule 5.11(a) (1992). Pugh was convicted of mail and wire fraud, interstate and foreign transportation of money obtained by fraud, money laundering, and fraudulent concealment of material facts. Therefore, under the ABA Standards, disbarment would be an appropriate sanction.

In cases similar to this one, we have disbarred attorneys convicted of mail fraud and money laundering. *See, e.g., In re Perez*, 688 N.W.2d 562, 565, 569 (Minn. 2004) (disbarring attorney convicted of felony mail fraud related to his practice of law); *Oberhauser*, 679 N.W.2d at 154–55 (disbarring attorney based on conviction of money laundering); *In re Klane*, 659 N.W.2d 701, 701 (Minn.2003) (disbarring attorney who committed felony mail fraud in representing a trust); *In re Koss*, 611 N.W.2d 14, 14–15 (Minn.2000) (disbarring attorney convicted of felony mail fraud and racketeering); *Anderley*, 481 N.W.2d at 368, 370 (disbarring attorney based on a conviction of mail fraud); *In re Kraemer*, 361 N.W.2d 402, 403 (Minn.1985) (disbarring attorney for convictions of interstate transportation of stolen goods, mail fraud, conspiracy, and theft). We have also disbarred an attorney who misappropriated real estate sale proceeds received as a real estate closer. *In re Ploetz*, 556 N.W.2d 916, 916 (Minn.1996).

Here, Pugh argues that he should be subject to discipline short of disbarment,

raising as mitigation the argument that the actions on his part that resulted in his convictions were condoned and accepted in the title industry at the time he committed them, that he did not intend to commit a crime, and that he was only convicted of the felonies because certain witnesses lied during his trial. As part of his argument, Pugh points out that he has not been the subject of previous complaints "that have warranted action from the Director." He also emphasizes that his felonious conduct did not take place in his practice of law. The director, in arguing that Pugh should be disbarred, notes that Pugh's claimed mitigating factors are merely an attempt to use this proceeding to relitigate his underlying convictions.

While we will consider mitigating factors in determining the appropriate discipline, "[a] lawyer's criminal conviction in any American jurisdiction * * * is * * * conclusive evidence that the lawyer committed the conduct for which the lawyer was convicted." Rule 19(a), RLPR. Because a conviction is conclusive evidence, we will not allow an attorney to relitigate the underlying facts of the conviction. *In re Dvorak*, 554 N.W.2d 399, 402 (Minn. 1996).

Pugh's mitigation arguments fail. They fail because they do nothing more than attempt to explain why he should not have been convicted for his actions. In essence, the arguments are nothing more than an impermissible attempt to relitigate his underlying convictions. Further, with respect to his argument that his conviction arose out of a common business practice, we note that the fact that criminal activity may have been a common business practice does not affect Pugh's obligation to conduct himself according to the law and the ethical standards of the legal profession. As for Pugh's argument that he did not intend to commit a crime, it is enough

to note that "when the criminal conduct includes a specific state of mind, the conviction is conclusive evidence that the lawyer acted with that state of mind." *Oberhauser*, 679 N.W.2d at 159. Here, either intent, knowledge, or willfulness is an element of each offense for which Pugh was convicted. 18 U.S.C. § 2 (2000) (causing the act of another); 18 U.S.C. § 1001 (2000) (concealment of material fact); 18 U.S.C. §§ 1341, 1343 (2000) (mail and wire fraud); 18 U.S.C. §§ 1956(a)(1)(B)(i), 1957 (2000) (money laundering); 18 U.S.C. § 2314 (2000) (interstate and foreign transportation of property obtained by fraud). Therefore, the jury's guilty verdicts are conclusive evidence that, in misappropriating the money, Pugh acted with the requisite criminal intent.

To the extent that Pugh suggests that his disciplinary sanction should be lighter because his misconduct did not involve the practice of law, that suggestion also fails. We have held in the past that a lawyer's ethical obligations are not limited to actions occurring in the practice of law, but extend to business dealings unconnected with the practice of law. *In re Peters*, 428 N.W.2d 375, 380 (Minn.1988).

Finally, while we consider an attorney's lack of previous discipline to be a mitigating factor when determining the appropriate sanction, lack of previous discipline alone will not mitigate severe misconduct. *See In re Olsen*, 487 N.W.2d 871, 875 (Minn.1992) (disbarring attorney for misappropriation of client funds when lack of prior discipline was sole mitigating factor). The record before us establishes that Pugh's misconduct was not only serious, but continued over a period of more than three years, and resulted in the misappropriation of over $1 million from multiple clients of his real estate closing company. There being no other mitigating factors, Pugh's lack of previous discipline

does not mitigate the misconduct here. Given the seriousness of Pugh's misconduct and the absence of mitigation, we conclude that disbarment is the appropriate disciplinary sanction.

Therefore, we order that William C. Pugh be, and hereby is, disbarred.