STATE OF MINNESOTA

IN SUPREME COURT

A22-0574

Original Jurisdiction                                                              Per Curiam

In re Petition for Disciplinary Action against                    Filed:  April 2, 2025
Kristi D. McNeilly, a Minnesota Attorney,                    Office of Appellate Courts
Registration No. 0341265.

_____

Susan M. Humiston, Director, Binh T. Tuong, Deputy Director, Office of Lawyers
Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Kristi D. McNeilly, pro se, Woodbury, Minnesota, for respondent.

_____

S Y L L A B U S

Absent any mitigating factors, disbarment is the appropriate discipline for an
attorney who is convicted of felony theft by swindle.

Disbarred.

Considered and decided by the court without oral argument.

O P  I N  I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed
a petition for disciplinary action against respondent Kristi D. McNeilly.  We appointed a
referee, the parties executed a stipulation of facts, and McNeilly waived her right to an
evidentiary hearing.  The referee took the matter under advisement and ultimately found

1

that McNeilly committed a criminal act that reflected negatively on her honesty and trustworthiness: She stole $15,000 from a client by telling the client that the money was needed to bribe government officials to dismiss pending drug charges. The referee found no mitigating factors. For this misconduct, the referee recommended that McNeilly be disbarred. We agree. Based on McNeilly's misconduct—and the absence of any mitigating factors—we disbar McNeilly from the practice of law.

**FACTS**

McNeilly was admitted to practice law in Minnesota on October 29, 2004. McNeilly most recently practiced law in Woodbury. McNeilly has been disciplined on two prior occasions; she was publicly reprimanded and placed on probation for three years in 2015 and admonished in 2016.

McNeilly was criminally convicted of theft by swindle in 2022.[1] Following her conviction, the Director filed a petition for disciplinary action against McNeilly based on Rule 19(a), Rules on Lawyers Professional Responsibility (RLPR), which provides that "[a] lawyer's criminal conviction" is "conclusive evidence that the lawyer committed the conduct for which the lawyer was convicted." The petition alleged that McNeilly's criminal conviction was misconduct under Minnesota Rules of Professional Conduct

---

[1] The facts underlying McNeilly's conviction are detailed in our decision in *State v. McNeilly*, 6 N.W.3d 161, 170–75 (Minn. 2024).

8.4(b)[2] and (c).[3] We appointed a referee to hear the petition and to make and file findings of fact, conclusions of law, and recommendations for discipline.

Because the parties executed a stipulation of facts and McNeilly waived her right to a hearing, the referee based his findings on the stipulation and documentary evidence. We summarize the referee's findings as follows: In 2018, the Minnetonka Police Department executed a search warrant at a home where M.A.W. and J.J.S. resided. The police found illegal controlled substances during their search of the home. Following the search, and before the State filed criminal charges against them, M.A.W. and J.J.S. met with McNeilly. McNeilly agreed to represent M.A.W. for $20,000 and J.J.S. for $2,500. In May 2018, M.A.W. paid $22,500 to McNeilly's business account—not her trust account.[4]

Months later, on November 5, 2018, McNeilly both called and texted M.A.W., stating that she needed to speak with him urgently. McNeilly claimed that a Minnetonka detective and the prosecutor in M.A.W.'s case had asked to meet with her—in her words, a "bad sign." Hours later, at M.A.W.'s home, McNeilly told M.A.W. and J.J.S. that she had been invited into the "back room" where esteemed attorneys had the privilege to meet with authorities to make deals for clients that would not involve any charges. According

---

[2]   *See* Minn. R. Prof. Conduct 8.4(b) ("It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects[.]").

[3]   *See* Minn. R. Prof. Conduct 8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]").

[4]   *See* Minn. R. Prof. Conduct 1.15 (requiring lawyers to deposit client funds into identifiable interest-bearing trust accounts).

3

to McNeilly, this meant she had "made it" in her career. McNeilly also told M.A.W. that he was facing 15 to 20 years in federal prison for his drug case.

McNeilly claimed that M.A.W. could avoid federal charges if he paid $35,000 to a police union fund and worked as a confidential informant. McNeilly presented M.A.W. with a copy of a confidential informant form. M.A.W. declined the offer and expressed that he did not want to be an informant. McNeilly responded that if M.A.W. paid $50,000 to a police union fund, he could avoid charges without having to work as a confidential informant. McNeilly told M.A.W. that he should pay McNeilly and then she would deliver the money to the police union.

M.A.W. responded that he could pay McNeilly only $15,000 at that time but that he could pay more later. McNeilly stated that she would have to check with the detective. McNeilly went to M.A.W.'s garage, returned a few minutes later, and told M.A.W. that if he could get the $15,000 before 6:00 p.m., he could pay the rest later. McNeilly then drove M.A.W. to his bank. M.A.W. obtained a $15,000 cashier's check, and McNeilly instructed him to write "legal fees" on the memo line. McNeilly took the check and deposited it into her business account.

Eventually, M.A.W. contacted and retained a new attorney. The new attorney advised M.A.W. to request a refund, receipts for his payments, and his file from McNeilly. The new attorney also contacted the authorities about the bribery scheme that M.A.W. alleged McNeilly had facilitated. M.A.W. emailed McNeilly three times asking for a refund. McNeilly refused his request each time.

The Minnetonka Police Department referred the investigation to the Burnsville Police Department (BPD) and placed the Minnetonka detective on administrative leave. BPD interviewed the Minnetonka detective, M.A.W., and J.J.S. BPD obtained a warrant for McNeilly's bank records, which showed that she deposited the $15,000 cashier's check from M.A.W. into her business account—not her trust account. McNeilly's bank records showed that she used the $15,000 to make several payments—including a mortgage payment and payments to her credit card. McNeilly's bank records did not reflect a payment made to a police union. BPD also reviewed McNeilly's phone records. The phone records corroborated M.A.W.'s allegations that McNeilly called him on November 5, 2018. The phone records did not, however, show any calls between McNeilly and the Minnetonka detective.

In 2019, the State charged McNeilly with theft by swindle—a felony punishable by up to 10 years in prison. *See* Minn. Stat. § 609.52, subd. 2(a)(4) (2024); Minn. Stat. § 609.52, subd. 3(2) (2024). In 2021, a jury found McNeilly guilty of the offense. McNeilly appealed her conviction to the court of appeals, which affirmed. *State v. McNeilly*, No. A22-0468, 2022 WL 17747792 (Minn. App. Dec. 19, 2022). We likewise affirmed McNeilly's conviction. *State v. McNeilly*, 6 N.W.3d 161 (Minn. 2024).

The Director filed a petition for discipline against McNeilly. McNeilly filed an answer denying all misconduct. Pursuant to the parties' stipulation, we stayed disciplinary proceedings while McNeilly appealed her conviction, and we suspended McNeilly's license to practice law pending the outcome of the appeals. After we affirmed McNeilly's conviction, we directed the referee to proceed with the disciplinary proceedings.

5

On July 31, 2024, the parties executed and filed another stipulation (the July Stipulation). In the July Stipulation, the parties agreed to certain facts, and McNeilly waived certain rights, including: her right to submit findings of fact, conclusions of law, or a brief to the referee; her right to present evidence or make arguments; and her right to have a hearing on the petition before the referee. McNeilly admitted that her conviction for theft by swindle is conclusive evidence that she committed the conduct underlying the conviction and that that conduct violated Minnesota Rule of Professional Conduct 8.4(b). *See* Rule 19(a), RLPR. McNeilly also admitted that her conduct supported disbarment. Although McNeilly indicated that she wanted to make a record of alleged mitigating factors, she acknowledged that she would not be filing any evidence in support of those mitigating factors, and she waived her right to a hearing and to submit findings of fact, conclusions, or a brief in support of the alleged mitigating factors.

On September 25, 2024, the referee issued his findings of fact, conclusions of law, and recommendation for discipline. The referee incorporated the parties' July Stipulation into his findings. The referee concluded that McNeilly's criminal conviction is conclusive evidence that she violated Minnesota Rule of Professional Conduct 8.4(b); McNeilly's conduct harmed both the public and the legal profession by undermining public confidence in the honesty and integrity of lawyers; there were no mitigating factors; and no evidence militates against disbarment as the presumptive sanction for McNeilly.[5]

---

[5] Although the Director's petition alleged that McNeilly's criminal conduct violated Minnesota Rules of Professional Conduct 8.4(b) and (c), the referee did not address

The referee then considered whether there was evidence of aggravating factors and concluded that there were four: (1) McNeilly's lack of remorse; (2) the fact that her criminal conduct was perpetrated against a client; (3) the harm that her conduct, in falsely implying that she could influence the prosecutor and the police, did to the public's view of the legal profession and the judicial system; and (4) her two instances of prior discipline. Accordingly, the referee recommended that McNeilly be disbarred.

Neither party challenged the referee's findings of fact, conclusions of law, and recommendation for discipline. The Director filed a brief asking this court to adopt the referee's recommendation and disbar McNeilly. McNeilly did not file a brief in this court.[6]

## ANALYSIS

Because McNeilly failed to file a brief to this court, the referee's findings of fact and conclusions of law are deemed conclusive. *In re Udeani*, 945 N.W.2d 389, 396 (Minn. 2020) ("[I]f a party . . . fails to file a brief, he or she has essentially failed to allege that the referee committed clear error.").[7] As a result, the only issue before us is the appropriate discipline for McNeilly.

---

Rule 8.4(c) in its findings and conclusions. We address only McNeilly's violation of Rule 8.4(b).

[6] Oral argument on this matter was originally scheduled for February 6, 2025. On January 9, 2025, the Director notified this court that McNeilly requested that oral argument be waived. The Director did not object to McNeilly's request. We granted McNeilly's request and cancelled oral argument.

[7] A referee's findings and conclusions are deemed conclusive when neither party orders a transcript of the proceeding. Rule 14(e), RLPR. In this case, the parties executed a stipulation, and McNeilly waived her right to an evidentiary hearing. The parties did not,

7

The purpose of professional discipline "is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). And although we place "great weight" on the referee's recommendation, we retain responsibility for determining the appropriate sanction. *Id.*

To determine the appropriate discipline for an attorney, we consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Kleyman*, 960 N.W.2d 566, 572 (Minn. 2021). We also consider aggravating and mitigating circumstances. *Id.* And although we impose discipline case by case, we look to similar cases for guidance and to ensure consistent discipline. *In re Capistrant*, 905 N.W.2d 617, 620 (Minn. 2018).

We first consider the nature of McNeilly's misconduct—stealing $15,000 from a client, which resulted in a felony conviction for theft by swindle. "[T]he presumptive discipline for a felony conviction is disbarment, particularly where the criminal conduct occurs (as in this case) within the practice of law." *In re Andrade*, 736 N.W.2d 603, 605 (Minn. 2007). That said, "[w]e will not automatically disbar attorneys convicted of felonies . . . and will consider the circumstances surrounding the criminal act to determine

---

however, enter into a stipulation for discipline or to any certain conclusions. And because there was no evidentiary hearing, there was no transcript for McNeilly to request. As noted above, however, because McNeilly failed to file a brief, she has failed to allege that the referee committed clear error. *Udeani*, 945 N.W.2d at 396.

if any discipline short of disbarment is appropriate." *In re Strunk*, 945 N.W.2d 379, 387 (Minn. 2020).

Our inquiry on this issue is "fact intensive, and considers numerous factors, including the nature of the criminal conduct, whether the felony was directly related to the practice of law, and whether the crime would seriously diminish public confidence in the profession." *Id.* We have ordered lesser sanctions than disbarment when the criminal conduct was not directly related to the practice of law and when there were substantial mitigating circumstances. *In re Ginsberg*, 690 N.W.2d 539, 555–56 (Minn. 2004); *In re Daffer*, 344 N.W.2d 382, 385 (Minn. 1984). Here, McNeilly's criminal conduct was directly related to her practice of law. Her victim was her client. And there are no mitigating circumstances.

The severity of McNeilly's conduct is compounded by the fact that she misappropriated $15,000. Misappropriation occurs when "funds are not kept in trust and are used for a purpose other than one specified by the client." *In re Brooks*, 696 N.W.2d 84, 88 (Minn. 2005). We have repeatedly stated that disbarment is the appropriate discipline for misappropriation of client funds without mitigating factors. *In re Rhodes*, 740 N.W.2d 574, 579 (Minn. 2007); *In re Lee*, 3 N.W.3d 278, 284 (Minn. 2024). And "[a]ttorneys who have *not* been disbarred for convictions for theft, fraud, or embezzlement have presented substantial mitigating factors." *In re Brost*, 850 N.W.2d 699, 705 (Minn. 2014) (emphasis added). As noted above, there are no mitigating factors here. And McNeilly's conduct went beyond the ordinary circumstances of misappropriation from a client—as reflected by her felony conviction for theft by swindle.

9

Because McNeilly's actions included misappropriation, resulted in a felony conviction, and undermined public confidence in the honesty and integrity of lawyers, the nature of her misconduct weighs heavily in favor of a severe sanction.

Next, we consider "the cumulative weight of all of the professional misconduct in determining the appropriate sanction." *Rhodes*, 740 N.W.2d at 580. "We distinguish between a brief lapse in judgment or a single, isolated incident and multiple instances of misconduct occurring over a substantial amount of time," the latter of which warrants greater discipline. *In re Igbanugo*, 989 N.W.2d 310, 329–30 (Minn. 2023) (citation omitted) (internal quotation marks omitted). In this case, McNeilly's conduct took place over about a week and relates to one client. Although this was more than a brief lapse in judgment, this conduct does not establish an extended pattern warranting more severe discipline. *See In re Majors*, 973 N.W.2d 621, 629 (Minn. 2022).

We also measure harm to the public based on the number of persons harmed and the extent of their injuries. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011). The referee concluded that McNeilly harmed one client, M.A.W., who lost $15,000. McNeilly's conduct also harmed a non-client and led to a Minnetonka detective being placed on leave pending an investigation. *See In re Bradley*, 7 N.W.3d 604, 609 (Minn. 2024) (considering harm to non-client members of the public). This factor weighs in favor of a severe sanction.

Finally, we consider the harm to the legal profession. Misappropriation of client funds "is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *In re Rooney*, 709 N.W.2d 263, 270 (Minn. 2006). The premise of McNeilly's conduct—her assertion that she would bribe a police officer in

10

exchange for leniency—only further impugns the reputation of the legal profession. This factor weighs heavily in favor of severe sanction.

The referee found no mitigating factors, and McNeilly failed to allege any, as she failed to file a brief to this court. Although the referee found several aggravating factors, we need not consider them under these circumstances. In the absence of any mitigating factors, the commission of a felony and the misappropriation of client funds warrants disbarment. *Andrade*, 736 N.W.2d at 605; *see also In re Perez*, 688 N.W.2d 562, 567 (Minn. 2004) ("We view felony convictions as serious misconduct, and we have disbarred lawyers convicted of a felony absent significant mitigating factors."); *Lee*, 3 N.W.3d at 284 ("In the absence of any mitigating factors, misappropriation of client funds warrants disbarment."). Accordingly, we conclude that the appropriate discipline for McNeilly is disbarment.

## CONCLUSION

For the foregoing reasons, respondent Kristi D. McNeilly is disbarred from the practice of law in the State of Minnesota, effective on the date of this opinion. Respondent must comply with Rule 26, RLPR (requiring notice to clients, opposing counsel, and tribunals), and must pay $900 in costs under Rule 24(a), RLPR.

Disbarred.